[L. A. No. 6617. In Bank.—August 24, 1921.]

## THE SAN BERNARDINO COUNTY SAVINGS BANK (a Corporation), Respondent, v. A. C. DENMAN, Jr., et al., Appellants.

[1] CORPORATIONS — STOCK SUBSCRIPTION — PAYMENT ON CALL. — The agreement of a stockholder with the corporation to purchase its stock, in the absence of any special agreement for a different price, or a different time of payment, is an agreement that he will pay the par value of the stock on call.

[2] ID.—PAYMENT IN ADVANCE OF CALL—RIGHT OF STOCKHOLDER.— The rule that a corporation cannot enforce a stockholder's liability for unpaid stock subscriptions against one stockholder without demanding a proportional payment by all the stockholders by means of a call is for the benefit of the stockholder, and he is at liberty to waive it at any time and pay in full or in part for his stock, provided the corporation is willing to accept it.

[3] ID.—PAYMENT TO AUTHORIZED AGENT—DISCHARGE OF LIABILITY.— In the absence of fraud, a payment by a stockholder to an agent of the corporation who is authorized to receive it of a part or all of the sum owing by him on his stock subscription is a discharge of that liability and is binding on creditors.

[4] ID.—PAYMENTS WITHOUT FORMAL CALL—DEMAND OF MANAGER— DISCHARGE OF STOCK SUBSCRIPTION LIABILITY.—Where by common consent of all the stockholders of a going corporation one of their

number was authorized to perform the functions of all the officers, and whenever additional money was required the stockholders upon his demand paid their proportional amounts thereof, with the understanding that it constituted a credit on the balance due on their stock subscriptions, such payments operated as a discharge *pro tanto* of their obligations binding on the corporation and creditors.

APPEAL from a judgment of the Superior Court of San Bernardino County. Rex B. Goodcell, Judge. Reversed.

The facts are stated in the opinion of the court.

H. C. Beach, Janeway & Beach and Edgar G. Pratt for Appellants.

W. J. Curtis and McNabb & Hodge for Respondent.

SHAW, J.—The defendants appeal from a judgment in favor of the plaintiff.

The complaint states a cause of action in favor of the plaintiff as a creditor of a certain corporation known as the San Bernardino Theater Company to recover of the defendants certain sums alleged to be due and unpaid upon their subscriptions to the capital stock of said Theater Company, and to have said sums applied in satisfaction of the debt owing by said Theater Company to the plaintiff. The answer denied the liability and denied that any money was due or unpaid upon the stock subscriptions of the defendants.

The court found that the stock was of the par value of one hundred dollars per share; that the defendant Denman was the owner of 136 shares thereof; that Fisher owned thirty-four shares; that only $38.03 had been paid on each share, and that the remainder, $61.97 per share, was due and owing from each of them upon the number of shares owned by them respectively. Judgment was rendered in favor of the plaintiff against each defendant for the amount due from him on said stock, but not to exceed from either or both the amount of $7,854.97 and interest, found to be due from said Theater Company to the plaintiff.

Evidence was given tending to show that in addition to the sum of $38.03 paid on each share, as found by the court, the said defendants had paid for the benefit of the

company other sums which, by an agreement among the stockholders, were to be considered as paid upon the stock subscriptions of the said defendants. These additional sums were not allowed by the court as a credit upon the said stock subscriptions. The principal point argued in the briefs is the question whether or not these several payments, or any of them, should have been credited as payment upon the stock subscriptions.

The Theater Company was incorporated on January 17, 1903, with a capital stock of seventy-five thousand dollars, divided into 750 shares at one hundred dollars a share. Seven persons subscribed for stock and became members of the corporation, taking one share of stock each and paying full value therefor. They were all elected directors and Denman was elected president. About the same time they each contributed money, amounting to some $8,575, for the purpose of buying a lot in San Bernardino as a site for a theater building which the company was organized to construct and carry on. With this fund a lot was purchased by the defendant Denman, which was by him conveyed to the corporation. At the time of said conveyance all of the remaining 743 shares of stock were issued to him. The plan was to raise the money necessary to erect the proposed building by sales of the corporate stock. In pursuance of this plan he transferred to each of the other six incorporators thirty-four shares of the stock, keeping thirty-four shares himself, and returned to the corporation 505 shares. In effect, the transaction amounted to an issue to each stockholder of thirty-four shares in consideration of his contribution to the purchase money of said lot. As the lot was found to be of the value of only $8,575 at that time, the transaction amounted to a payment of $36.03 per share upon each share of stock so issued to the respective incorporators. It was found impossible to sell other shares of the stock. Thereupon it was determined to borrow fifteen thousand dollars and erect a theater building on the lot with the money. Accordingly, the plaintiff loaned to the company fifteen thousand dollars, taking its note for that amount and a deed of trust in the nature of a mortgage upon the property to secure the same. With this money the building was erected. Something like a year was occupied in these transactions. The stockholders all

understood that the thirty-four shares so issued to them, respectively, were not fully paid up and that the balance was to be paid in afterward if necessary for the carrying on of the enterprise. At or about the time the deed of trust was made, the defendant Denman acquired the shares of three others of the original incorporators and thereby became the owner of 136 shares of the stock issued as partly paid. In October, 1904, a call for two dollars per share on the stock was entered in the minute-book of the company and was voluntarily paid, thus making up the $38.03 which the court found had been paid on the stock. The enterprise did not prove successful and contributions became necessary from time to time for the purpose of paying interest to the plaintiff and for other expenses. The corporation business was transacted in a very informal manner. Meetings of the directors were held occasionally up to September 20, 1906, after which date there were none. A minute-book was kept in which was entered the proceedings at these meetings. The company had no office and kept no regular books of account, nor any other books except a book of stock certificates showing the issuance and transfers thereof. The business of the corporation was managed entirely by the defendant Denman as president by the original election and as general manager by common consent. When it was necessary to have more money to keep up the expenses he would first advance the same and then collect from the other stockholders their proportion thereof according to their respective holdings of stock. There was evidence to the effect that it was understood between all of them that the payments so made to Denman were to be considered as a credit upon the unpaid balance owing upon their stock subscriptions. Denman kept an account of these payments in a small book which he carried in his pocket. The book was lost before this action was begun and could not be produced at the trial. This book and the book of checks containing stubs appear to have constituted the only records made by Denman or anyone else on behalf of the corporation showing the money transactions of the Theater Company. The only other account thereof, and it was not complete, was the bank account kept by the San Bernardino National Bank showing the deposits and checks made by the Theater Company. The payments for which credits on the stock sub-

scriptions are now claimed were, for the most part, made during the years from 1904 to 1912, inclusive. It appears that none of the stockholders at that time expected any suit by plaintiff to reach the liability on stock subscriptions, and that they did not carefully preserve their individual accounts regarding the payments. There is positive evidence that substantial sums were paid by the defendants and that such payments were intended to apply on the subscriptions. The evidence as to the amounts so paid is not in all instances definite and clear. The court might have found a sum less than the defendants claimed. But there is no suggestion or claim that there was any bad faith, and the evidence on the subject of the payments is not contradicted. The parties concerned were all men of means; they had been friends for many years, and the enterprise was conceived and carried out for the purpose of advancing their common interests as citizens and property owners of the city of San Bernardino, as well as the interests of the general public of that city.

From the conduct of the case and the briefs of counsel it is clear that the court below, in refusing to allow credit for payments in excess of the $38.03 on the stock subscriptions, did not go upon the theory that the evidence was too indefinite as to the amount, or was insufficient to show any payment on account of the stock, but that it refused to allow further credit for payments on the theory that the stockholders were not entitled to such credit for payments, unless they were made in pursuance of a formal call by the directors, or upon the theory that the payments were invalid as credits on the subscriptions because they were not made to the corporation directly, but to Denman, who, it is claimed, was without valid authority to receive them for that purpose, or because they were paid to him to reimburse him for money he had already paid on the corporate debts, which was true in many instances. The evidence as to some of the payments that they were made for the benefit of the corporation and that all the stockholders believed, agreed, and understood that they were to be applied on the subscriptions was uncontradicted, and unless one or the other of the last-mentioned theories is sound, the court should have allowed credit for them on the stock subscriptions.

We think the court below erred if it adopted either of the supposed theories as applicable to the facts of this case. **[1]** The agreement of a stockholder with the corporation to purchase its stock, in the absence of any special agreement for a different price, or a different time of payment, is an agreement that he will pay the par value of the stock on call. In this case that was the agreement finally made with respect to the unpaid balance. Seven of the shares were fully paid up and the court so found. The other shares were understood to be paid, and were in fact and in law paid up, only to the cost of the lot purchased by the corporation with the money advanced in its behalf by the stockholders prior to the purchase. This the court found to be $36.03 per share. The obligation of each stockholder to pay the balance was, in legal effect, a simple contract obligation to pay that amount at a time not specified, in consideration of the shares issued. Payment could lawfully have been offered at any time thereafter, and if accepted by the corporation it would apply on the subscription price and would be good against creditors seeking to reach the subscription liability. There is nothing contrary to the policy of the law in this proposition. It is true that the corporation could not have enforced this liability against one stockholder without demanding a proportional payment by all of them by means of a call. **[2]** But this is a rule for the benefit of the stockholder, and he is at liberty to waive it at any time and pay in full or in part for his stock, provided the corporation is willing to accept it. The creditors of a corporation do not stand in a position to complain of such payment, since it will inure to their benefit as much as to that of the corporation itself. The rule is the same as in the case of any other obligation to pay money on similar conditions. The rule that a call may be waived and that payment may be made at any time is a settled principle of the law of corporations, although the question does not often arise, for the reason that such advance payments are infrequent. In *Marsh* v. *Burroughs,* 1 Wood (U. S. C. C.) 468, [Fed. Cas. No. 9112], decided in 1871, a case involving payment of subscription liability for stock of a bank, the court, referring to this subject, said that when a stockholder subscribes for stock the par value of which is not paid at the time, "it is the right of the stockholder to pay it. The mode of calling it in, prescribed by

the charter (in this state, by the statute), is a mere form of remedy, given to the bank to enforce the subscription, usually followed by forfeiture for nonpayment if the bank so choose. But the stockholder is not obliged to wait until a call is made upon him. He may pay in at any time.'' This doctrine has ever since been regarded as settled and the case is cited by all the text-writers who have touched on the question. (1 Cook on Corporations, sec. 106; 4 Thompson on Corporations, 2d ed., sec. 3687. To the same effect, see *In re Wyncham etc. Co.,* L. R. 9 Ch. Div. 328.)

[3] The necessary consequence is that, in the absence of fraud, a payment by a stockholder, to an agent of the corporation who is authorized to receive it, of a part or all of the sum owing by him on his stock subscription is a discharge of that liability and is binding on creditors.

Another consideration leads to the same conclusion. The suit of a creditor to have the stock subscriptions applied on his debt is merely one instance of a resort to the equitable remedy of a creditor's bill; a proceeding in equity to reach assets of the debtor which cannot be got in an ordinary action at law. The creditor is seeking for assets of the debtor, that is, money or credits due to the debtor. He cannot reach anything that does not constitute assets of such debtor. His standing in the court must always be in the shoes of the debtor, and he can obtain no greater relief than his debtor could obtain, at least to this extent, that he cannot force payment from one who is not the debtor of his debtor. A valid obligation must exist in favor of the debtor against the party sued, or the creditor's bill will not lie against him. Hence, if the obligation once existed, but has lawfully been paid before the proceeding on the creditor's bill attached to it, the bill must fail. Equity has gone so far, when stock subscriptions are sought by a creditor of a corporation, as to hold that the creditor may compel payment through the court without a previous call by the corporation, although the corporation cannot enforce payment except by a call in some states and under ordinary conditions; but it has gone no further, and it cannot disregard or refuse to credit payments made in good faith by the stockholder without a call.

It has been held that a payment by a stockholder of a debt owing by the corporation which is insolvent, with

the intent thereby of discharging his liability on his unpaid subscription, and which the accredited officers of the corporation did not authorize or accept, is not good in defense to a creditor's bill against the stockholder. But in this case there was no proof of insolvency at the time the greater part of the payments in question were made, nor any finding of insolvency prior to the beginning of the action, and that principle does not apply as to them.

It is claimed, on the authority of *Welch* v. *Sargent,* 127 Cal. 72, [59 Pac. 319], that no payment can be credited where the payment is made to a creditor upon the corporate debt, or in any case where it is not made to the proper officer of the corporation to be applied on the balance unpaid on the stock. In *Welch* v. *Sargent* the payment was made to a creditor in discharge of his claim against the corporation, and the corporation did not agree that it should constitute a payment on the stock subscription, nor accept or credit it as such. The only person who had the intent that it should so apply was the stockholder himself. In discussing the effect of such payment on the stockholder's liability the court remarked that the stockholder's liability is an asset of the corporation which "is payable to the corporation and no one else." It is upon this remark that the respondent relies. It cannot be given the effect here claimed for it, and the context shows that it was not so intended. In the absence of fraud, actual or constructive, the corporation and the stockholder are at liberty to effect a payment in any mode they see fit, either in property, or in payment of a corporate debt, or in actual cash or its equivalent. There is nothing in the opinion in that case that is contrary to these principles of the law of contracts.

[4] Coming now to the facts shown in the evidence bearing on the proposition, we find that no formal call was made in the ordinary manner. But it is clear that there was that which in substance amounted to a call. Denman was the leader of the seven persons who formed the corporation and after its formation the entire management of its affairs was left to him. After the theater building was completed with the borrowed money, he attended to all of its business. There was no office, no treasurer, and no ordinary books of account. By common consent of all the stockholders he was authorized to perform the functions

of all the officers, and he did perform them without objection from any of them. He kept account of the debts and expenses accruing in excess of the receipts; he collected the rents and applied them on the interest accruing to the plaintiff and other expenses, and when additional money was required he ascertained the amount necessary and apportioned it to the stockholders according to their holdings, informed them of the amount due from them, and they paid it on his demand, with the understanding that it constituted a credit on the balance due on the subscription liability. The corporation was then a going concern and this method of carrying on its business was satisfactory to all the persons interested. We can perceive no reason why, under all these circumstances, the payments so made did not operate as a discharge, *pro tanto,* of the obligation of the stockholders to pay the balance of the par value of the stock, binding on the corporation, and likewise binding upon the court in the trial of an action to collect and apply the unpaid subscriptions upon the claims of such a creditor.

The judgment is reversed.

Sloane, J., Shurtleff, J., Lennon, J., and Wilbur, J., concurred.