[L. A. No. 7106. In Bank.—January 9, 1924.]

## E. B. SPENCER, Appellant, v. ALICE H. ANDERSON et al., Defendants; FRANCIS L. ANTON et al., Respondents.

[1] CORPORATIONS — ACTIONS BY CREDITORS AGAINST STOCKHOLDERS— CLASSES AND NATURE OF.—Actions by creditors of a corporation to recover upon the stockholders' unpaid subscriptions sound exclusively in contract, while the gist of actions by such creditors to recover from stockholders who have received bonus or watered stock is tort. Both are creditor's bills in equity, both are actions by a creditor of a corporation, seeking the aid of equity for the satisfaction of his claim out of assets not reachable by the ordinary processes of law, and in both (but for different reasons) the plaintiff is required to allege and prove the recovery of a judgment against the corporation and the return of execution *nulla bona* (or that the corporation has become insolvent).

[2] ID.—CAUSE OF ACTION — MISREPRESENTATIONS — DEBTS.—One who is induced to purchase stock in a corporation by misrepresentation of material facts is injured thereby as soon as the purchase is consummated, because the stock which he has received in return for his money or property is worth less than it would have been had the representations been true; but one who merely extends credit to a corporation upon the faith of such misrepresentations does not thereby become interested in the assets or welfare of the corporation or the value of its shares; he is interested only in the collection of his debt when due, and he has no cause of action

---

1. Liability of stockholders to creditors for corporate debts, note, 3 Am. St. Rep. 806.

(1)

against the stockholder unless he is prevented from collecting his debt or some portion thereof.

[3] ID.—STATUTE OF LIMITATIONS—BONUS OR WATERED STOCK—ACCRUAL OF CAUSE OF ACTION.—The statute of limitations does not commence to run against the right of action of a corporate creditor to recover from the holder of bonus or watered stock until he has recovered judgment against the corporation and finds no corporate assets from which to satisfy it.

[4] ID. — CREDITORS — UNPAID SUBSCRIPTIONS — PARTIES — PRIVITY—EQUITY.—In an action by a corporate creditor to recover upon an unpaid subscription of a stockholder, while the obligation rests in contract, there is no privity between the creditor and the stockholder, and the creditor must resort to equity for the enforcement of the obligation.

[5] ID.—ACCRUAL OF CAUSE OF ACTION—EXHAUSTING LEGAL REMEDIES—STATUTE OF LIMITATIONS.—The right of action of a creditor of a corporation in equity to recover from a stockholder upon his unpaid subscription does not arise until the recovery of a judgment against the corporation and the return of execution unsatisfied, and the statute of limitations thereon runs from that time.

[6] ID. — DEFENSES IN FAVOR OF CORPORATION — AVAILABILITY OF AGAINST CREDITOR.—In such an action any defense available to the corporation against the claim is available against the creditor, and if the debt is barred by the statute as to the corporation, this is a good defense to the creditor's suit against the stockholder.

[7] ID.—SUBSCRIPTION AGREEMENT — TIME FOR PAYMENTS — CALLS—WHEN ACTION BARRED.—The sole purpose and effect of a call upon the liability of a subscriber for an unpaid subscription for corporate stock is to make absolute that which was conditional and to fix the time for performance, but where the subscription agreement fixes a time for payment, a call is unnecessary, adds nothing, the right to make it does not toll the statute, and the statute begins to run from the time payment is due, and an action brought more than four years thereafter by a creditor of the corporation against the stockholder upon his unpaid subscription is barred.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

4. Creditor's knowledge that stock is unpaid as affecting stockholder's liability, note, 7 A. L. R. 972.

7. Running of limitation statute with respect to call subscriptions as dating from call, note, 4 Ann. Cas. 728.

Dana R. Weller and C. F. Culver for Appellant.

W. E. Lady, Leander O. Hatch, Henry O. Wackerbarth, Stutsman & Stutsman, Harry B. Washburn, Clarence L. Variel, William F. Adams, W. T. Craig, Denis Evarts, Bowman, Muhleman & Crump, H. T. Morrow, A. R. T. Truex, S. F. Macfarlane, Henry Schaefer, Jr., Roland H. Mulford, Mattison B. Jones, Overton, Lyman & Plumb, D. H. Laubersheimer, Williams & Williams, John B. Nichols, John B. Haas, Flint & MacKay, H. S. MacKay, Jr., and Emery & Rehart for Respondents.

MYERS. J.—This is a creditor's action to recover on unpaid subscriptions to the stock of the Medical Building Corporation. The plaintiff alleged and proved himself to be a judgment creditor of the corporation, he having commenced an action against the corporation on July 12, 1915, and secured a judgment thereon on December 31, 1917, against the corporation, upon which judgment an execution was taken out and returned unsatisfied. The present action was begun April 25, 1918. The contract upon which the plaintiff's claim arose was entered into on March 12, 1912, upon which last-named date and prior to the execution of the contract the corporation was formed. The services were rendered pursuant to the contract, from the date of its execution until November 1, 1914. The plaintiff was at all times after the incorporation a director, vice-president, and general manager of the concern, and his duties included assisting in the sale of stock and bonds. Although this proposition is disputed, we think that for the purposes of this appeal the defendants must all be regarded as having subscribed for stock and bonds, having placed their subscriptions between the 12th of July, 1912, and the 1st of February, 1913. They each signed an instrument consenting to the creation of a bonded indebtedness of the corporation of $1,500,000, which instrument recited that the signers were stockholders. With a few exceptions, they made payments to the Medical Building Corporation upon their subscriptions after March 12, 1913. The corporation was organized to erect a building for the use of members of the medical profession, to cost about $800,000. They signed contracts providing for the payment of a certain sum down

and installments thereafter until the whole amount should be paid. The subscription contracts executed by the several defendants respectively differed somewhat in terms, but they all provided for the payment of the purchase price in specified installments at specified times, and the latest installment to mature under any of the contracts here in question fell due not later than November, 1913, which was more than four years prior to the commencement of this action. The following copy is fairly illustrative of all of the subscription contracts involved herein:

"Los Angeles, Cal., Febr. 20, 1913.
"Medical Building Corporation,
    "230 Consolidated Realty Bldg.,
       "Los Angeles, Cal.

"I here subscribe for $500.00 par value of 6%, second mortgage gold bonds, and $500.00 par value of the stock of the Medical Building Corporation, for which I agree to pay $50 cash and $50 each month for the next 9 months.

"Name: Randall Hutchinson.

"Address: 330 Bradbury Bldg., L. A. Cal.

"Make all checks or drafts payable to Medical Building Corporation.

"Note: Terms may be changed to 10% cash and balance April 1st."

The subscription in each instance called for not less than one share of stock and an equal number of bonds at a unit price of $100 for each share of stock and one bond. None of the defendants had completed payments under their agreements, although the installments were long past due. At the close of the plaintiff's case a motion for nonsuit was made by the defendants and granted, and judgment entered pursuant thereto.

The respondents maintain that the trial court was justified in its ruling for the following reasons: That the action is barred by the statute of limitations; that the plaintiff's case was incomplete without proof of tender of stock and bonds; that the plaintiff had knowledge of the circumstances existing and surrounding the making of all the subscriptions and therefore cannot avail himself of the right of an ordinary creditor against stockholders for whose stock the corporation has not received full value; that many of these defendants were not in fact subscribers of the Medical

Building Corporation, but of the Los Angeles Medical Association Building Company, which preceded the former corporation, and that such as subscribed for Medical Building Corporation stock did so after the issuance of the stock; that the judgment against the Medical Building Corporation is void because its charter had been forfeited through nonpayment of its corporation tax.

[1] In considering the questions presented by the defense of the statute of limitations, it is important to keep in mind essential differences between actions by a creditor of a corporation to recover upon the stockholders' unpaid subscriptions, on the one hand, and actions by such a creditor to recover from stockholders who have received bonus or watered stock, upon the other hand. Some of these differences are clearly pointed out in *Rhode* v. *Dock-Hop Co.*, 184 Cal. 367 [12 A. L. R. 437, 194 Pac. 11]. Actions of the first class sound exclusively in contract, while the gist of the actions of the second class is tort. The two classes of actions present many points of similarity, and the failure to distinguish between them has led to unfortunate confusion, particularly in the earlier cases. Both are creditors' bills in equity, both are actions by a creditor of a corporation, seeking the aid of equity for the satisfaction of his claim out of assets not reachable by the ordinary processes of the law, and in both (but for different reasons) the plaintiff is required to allege and prove the recovery of a judgment against the corporation and the return of execution *nulla bona* (or that the corporation has become insolvent). But here the similarity ceases.

The cause of action to recover upon unpaid subscriptions rests in contract as to every element thereof. It is in the nature of an equitable garnishment in aid of execution. By it the creditor seeks to recover not upon a debt due to him, but upon a debt due to his debtor. He seeks the interposition of equity to aid in the execution of his judgment by applying to the satisfaction thereof assets of the judgment debtor which consists of debts owing from third persons to such judgment debtor. In so doing he places himself in the shoes of the judgment debtor and prosecutes the action against the debtors of the latter, not in his own right, but in the right of the judgment debtor—the corporation.

The creditor's bill against the holder of watered stock, on the other hand (i. e., one who has received stock from the corporation and paid therefor ostensibly in full, but in property at a fraudulently excessive valuation), proceeds upon entirely different principles. Here, though the creditor's claim against the corporation may rest in contract, his claim as against the stockholder rests in tort. The gist of his action against the latter is the fraud and deceit of the corporation in falsely representing its corporate capital to have been paid in full when it was not. (*Harrison* v. *Armour,* 169 Cal. 787, 790 [147 Pac. 1166]; *Rhode* v. *Dock-Hop Co., supra.*) In this action the creditor does not stand in the shoes of the corporation, and he is not suing to recover upon a claim of the corporation against the stockholder. He may recover, though the corporation have no such claim. His action is not upon a debt due from the stockholder to the corporation. It is to recover compensation for a wrong done directly to him by the corporation acting for the stockholder and participated in by the latter. The gist of the creditor's action is that he was induced to extend credit to the corporation by the false representations of the corporation respecting the amount paid in by the stockholder to the corporate capital, and the measure of his recovery is the same as in ordinary actions for damages for deceit, namely, the difference between the amount which has actually been paid in by the stockholder to the corporate capital and the amount which would have been paid in had the representations been true. It follows that the creditor cannot recover in this class of cases unless he was actually deceived by the misrepresentations. If he in fact knew that the stock was watered at the time he extended credit to the corporation, he cannot claim to have been misled by the misrepresentations, and therefore cannot recover. (*Sherman* v. *Harley,* 178 Cal. 584 [7 A. L. R. 950, 174 Pac. 901]; *Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534, 546 [197 Pac. 799].) It also follows that a creditor who has been so deceived and misled may recover in this class of cases against the stockholders, even though the corporation itself could not. (*Rhode* v. *Dock-Hop Co., supra,* at p. 379.) It also follows that a creditor cannot recover against the holder of bonus or watered stock unless the latter has participated in the fraud, or has ratified it by accepting the stock with knowledge thereof.

(*Rhode* v. *Dock-Hop Co., supra; Sherman* v. *S. K. D. Oil
Co., supra.*)   It also follows that a creditor cannot recover
in this class of cases unless and until he has been actually
injured.   No matter how wrongful a misrepresentation may
be, it is not actionable unless and until it results in injury.
**[2]**   One who is induced to purchase stock in a corporation
by misrepresentation of material facts is injured thereby as
soon as the purchase is consummated, because the stock
which he has received in return for his money or property
is worth less than it would have been had the representations
been true.   But one who merely extends credit to a corpo-
ration upon the faith of such misrepresentations does not
thereby become interested in the assets or welfare of the
corporation or the value of its shares.   He is interested only
in the collection of his debt when due.   It matters not how
culpable the misrepresentations may have been by which he
was induced to extend credit, nevertheless, if his claim is
paid in full at maturity, he is not injured thereby, and
therefore has no right of action thereon.   It follows that
such a creditor suffers no injury, and therefore has no cause
of action unless and until he is prevented from recovering
his debt or some portion thereof.   If and when that occurs,
his cause of action against the stockholder comes into being.
That time occurs, in contemplation of law and under the
rules of equity jurisprudence, when a judgment has been
recovered against the corporation and execution returned
*nulla bona* (or when the corporation has become insolvent
and thus unable to pay its debts.)   **[3]**   Therefore the
statute of limitations does not commence to run against the
right of action of a corporate creditor to recover from the
holder of bonus or watered stock until he has recovered
judgment against the corporation and finds no corporate
assets from which to satisfy it.   In some states the insol-
vency of the corporation will also start this statute running,
but such seems not to be the rule in California.   (*Sherman*
v. *S. K. D. Oil Co., supra.*)

**[4]**   Returning now to the case wherein, as at bar, the
corporate creditor is seeking to recover upon an unpaid
subscription of a stockholder, we find an entirely different
situation.   "The foundation of this cause of action was de-
fendant's contract to pay the residue of his subscription [as
required] . . . " (as specified in his contract).   (*Glenn* v.

*Saxton,* 68 Cal. 353, 358 [9 Pac. 420].) It is clearly an action upon contract. (*Kohler* v. *Agassiz,* 99 Cal. 9 [33 Pac. 741].) "The object of this suit is to compel the corporation against whom the judgment was recovered to satisfy the same out of its assets. . . . " (*Baines* v. *Babcock,* 95 Cal. 581, 591 [29 Am. St. Rep. 158, 27 Pac. 674].) "All of the California cases sustaining judgments of foreign tribunals fixing a stockholder's indebtedness for unpaid subscriptions go upon the principle that such subscriptions are part of the assets of the corporation. . . . " (*Miller* v. *Lane,* 160 Cal. 90, 93 [116 Pac. 58].) While the obligation thus sought to be enforced rests wholly in contract, there is no privity between the corporate creditor and the stockholder (*Matteson etc. Co.* v. *Conley,* 144 Cal. 483 [77 Pac. 1042]), and the creditor must therefore resort to equity for the enforcement of the obligation. [5] But equity will not intervene until the creditor has exhausted his remedies at law, so he is required to first obtain a judgment against the corporation and the issuance of an execution thereon which remains unsatisfied. *His right of action in equity,* therefore, does not arise until the recovery of such judgment and the return of such execution, and the statute of limitations *thereon* (Code Civ. Proc., sec. 343) runs from that time. (*Sherman* v. *S. K. D. Oil Co., supra,* at p. 545.)

[6] The present action was commenced within less than a year after judgment was obtained against the corporation, therefore the statute of limitations has not run against the right of the plaintiff to commence and maintain this action. But this conclusion does not dispose of the contention made by the defendants herein. The plaintiff is here seeking to apply to the satisfaction of his judgment certain corporate assets consisting of choses in action of the corporation against its stockholders. Briefly put, he is seeking to collect certain debts alleged to be owing from the defendants to the corporation. This raises the question whether or not such debts exist. If they never existed, or if they once existed but have been satisfied, of course the creditor cannot recover upon them, even though his right to maintain his creditor's bill be unchallenged. (*San Bernardino Co. S. Bank* v. *Denman,* 186 Cal. 710 [200 Pac. 606].) The creditor sues as the equitable assignee of the judgment debtor, and it would seem to follow that any defense which would be

good as against the latter should be equally good against the former. This, in effect, is the contention of the respondents herein. They assert that the statute of limitations has run—not against the right of action of the plaintiff to maintain this creditor's bill—but against the right of the corporation to collect upon their subscription contracts, which is the right the plaintiff is here seeking to enforce. We think this contention must be upheld. Each of the subscription contracts upon which the plaintiff is seeking to recover was an express written contract to pay money at times certain, and each had been in default more than four years at the time this action was commenced. This fact would afford a complete defense to an action by the corporation upon these contracts, and we see no good reason why it should not be equally available as against the plaintiff who sues in the corporation's right by equitable assignment or subrogation.

This precise question does not appear to have been decided in this state, but there are decisions which foreshadow its solution. In *Turner* v. *Fidelity Loan Concern,* 2 Cal. App. 122 [83 Pac. 62], it was held that the rights of a judgment creditor seeking to enforce the subscription of stockholders to the corporation as its debtors cannot in general be greater than those of the corporation if there is no fraud, actual or constructive, and no facts showing an estoppel of the stockholders as against the creditor. In *San Bernardino Co. S. Bank* v. *Denman, supra* (186 Cal., at p. 716 [200 Pac. 609]), this court said: "The suit of a creditor to have the stock subscriptions applied on his debt is merely one instance of a resort to the equitable remedy of a creditor's bill; a proceeding in equity to reach assets of the debtor which cannot be got in an ordinary action at law. The creditor is seeking for assets of the debtor, that is, money or credits due to the debtor. He cannot reach anything that does not constitute assets of such debtor. His standing in the court must always be in the shoes of the debtor, and he can obtain no greater relief than his debtor could obtain, at least to this extent, that he cannot force payment from one who is not the debtor of his debtor. A valid obligation must exist in favor of the debtor against the party sued, or the creditor's bill will not lie against him. Hence, if the obligation once existed, but has lawfully been paid before the proceeding on the creditor's bill attached

to it, the bill must fail." That in a creditor's bill to enforce unpaid subscriptions the defense may be available to a stockholder that the statute has run *as against the corporation* upon his subscription contract has been repeatedly recognized in this state. (*Glenn* v. *Saxton,* 68 Cal. 353, 358 [9 Pac. 420]; *Vermont Marble Co.* v. *Declez Granite Co.,* 135 Cal. 579 [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057]; *Union Sav. Bank* v. *Leiter,* 145 Cal. 696 [79 Pac. 441]; *Miller* v. *Lane,* 160 Cal. 90, 93 [116 Pac. 58]; *Sherman* v. *S. K. D. Oil Co., supra.*) In each of the cases last cited it was held that the statute would not commence to run in favor of the stockholders until the making of a call either by the directors or by a court of equity upon a creditor's bill. Those were all cases wherein the subscription contracts were silent as to the terms of payment, and a call was therefore necessary to fix the time of payment, and put the subscriber in default. In such case the liability of the subscriber is conditional and becomes absolute only when the call is made. As was said in *Miller* v. *Lane, supra,* "the stockholders are bound to pay only when a proper call has been made for the amounts promised by their subscriptions, such call setting the statute of limitations in motion." Obviously, where the subscription contract itself fixes the time of payment at a time certain and that time has passed, the making of a call thereafter would be but a work of supererogation. (See *Horseshoe Pier etc. Co.* v. *Sibley,* 157 Cal. 442, 446 [108 Pac. 308].)

[7] This last consideration furnishes the answer to appellant's contention that the corporation still possessed the power to levy assessments under sections 331, 332, and 349 of the Civil Code and that the continued existence of that power prevented the statute from running against it in favor of the stockholders. Respondents reply that the corporation here in question never possessed this power because one-fourth of its stock was never subscribed. But, aside from this, the sole purpose and effect of a call upon the liability of a subscriber for an unpaid subscription is to make absolute that which was conditional and to fix the time for the performance thereof. When the subscription contract contains an absolute promise to pay at a time certain, the making of a call after that time could add nothing

to the obligation thereof, and by the same token it would not serve to toll the statute already running thereon.

The decisions of the courts are not in complete accord upon this question, but the overwhelming preponderance of authority is in support of the following conclusions as to the application of statutes of limitation to creditors' bills in equity seeking to enforce the liability of stockholders as upon unpaid subscriptions: (1) That where the liability is predicated upon the issuance of bonus or watered stock, the statute does not begin to run until the recovery of judgment against the corporation and return of execution *nulla bona* (or in some cases upon the notorious insolvency of the corporation) ; (2) that where the liability is predicated upon the issuance of stock which is only partly paid and does not purport to be otherwise, the statute begins to run in favor of the stockholder, as against the corporation and also as against the corporate creditors (in the absence of circumstances of fraud or estoppel), at the times when the subscription payments fall due; that when the subscription contract is silent as to the times of payment of the balance (or provides that it is payable upon call), the statute does not begin to run until a call is made either by the directors or by a court of equity (or in some cases upon insolvency of the corporation) ; that when the subscription contract is express and unconditional and the terms of payment are therein specified, the statute begins to run upon each installment thereof as the same falls due.

"There are some early decisions and some *dicta* to the effect that subscribers for stock in a corporation cannot oppose the statute of limitations to a claim in equity by creditors to have the stock paid up, on the ground that, before payment, the stockholders are chargeable with a trust in favor of creditors, and this trust 'is a continuing subsisting trust and confidence to which the statute of limitations has no application.' According to the decided weight of authority, however, unpaid subscriptions simply create, as to the amount due thereon, the relation of debtor and creditor between the subscribers and the corporation, and if the statute of limitations runs against an action by the corporation to collect a subscription, as it may, it also runs, in the absence of fraud, against a suit in equity by creditors

to compel payment, or an action by a receiver or assignee.'' (6 Fletcher's Cyclopedia Corporations, p. 7133.)

"If the subscription is payable in installments at specified times, so that no call is necessary, the statute commences to run as to each installment from the time when it becomes due.

"In some jurisdictions it is held that the right of action does not accrue, and hence that the statute does not commence to run against it, until the corporation is shown to be insolvent by the recovery of a judgment and a return of *nulla bona*, and that it does begin to run from that time.'' (Id., p. 7139.)

The cases which are relied upon as holding that the statute does not run in such case until judgment and execution against the corporation do not in reality so hold. Upon analysis, they will be found to group themselves into three classes. (1) Cases involving bonus or watered stock and therefore resting in fraud. (*Lester* v. *Bemis Lumber Co.,* 71 Ark. 379 [74 S. W. 518]; *Montgomery Iron Works* v. *Roman,* 147 Ala. 434 [41 South. 811]; *Vaughn* v. *Alabama Nat. Bank,* 143 Ala. 572 [5 Ann. Cas. 665, 42 South. 64]; *Montgomery Iron Works* v. *Capital City Ins. Co.,* 137 Ala. 134 [34 South. 210]; *King* v. *Pony Gold Min. Co.,* 28 Mont. 74 [72 Pac. 309]; *Jones* v. *Whitworth,* 94 Tenn. 602 [30 S. W. 736]; *Christensen* v. *Colby,* 43 Hun, 362; *Christensen* v. *Quintard,* 36 Hun, 334; *Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534 [197 Pac. 799]; *Rhode* v. *Dock-Hop Co.,* 184 Cal. 367 [129 L. R. A. 437, 194 Pac. 11]; *Vermont Marble Co.* v. *Declez Granite Co.,* 135 Cal. 579 [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057]; *J. F. Lucey Co.* v. *McMillan,* 178 Cal. 425 [173 Pac. 1000]; *R. H. Herron Co.* v. *Shaw,* 165 Cal. 668 [Ann. Cas. 1915A, 1265, 165 Pac. 668].) (2) Cases involving unpaid subscriptions, where the subscription contract was silent as to the time of payment, or provided for payment upon call and no call had been made. (*Curry* v. *Woodward,* 53 Ala. 376; *Cherry* v. *Lamar,* 58 Ga. 541; *McGinnis* v. *Barnes,* 23 Mo. App. 213; *Hightower* v. *Thornton,* 8 Ga. 486 [52 Am. Dec. 413]; *Wilkins* v. *Worthen,* 62 Ark. 401 [36 S. W. 21]; *Washington Sav. Bank* v. *Butchers & Drovers' Bank,* 107 Mo. 133 [28 Am. St. Rep. 405, 17 S. W. 644]; *Appeal of Mack* (Pa.), 7 Atl. 481; *Union Sav. Bank* v. *Leiter,* 145 Cal. 697 [79 Pac. 441];

*Kohler* v. *Agassiz,* 99 Cal. 9 [33 Pac. 741]; *Baines* v. *Bab-cock,* 95 Cal. 581 [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]; *Glenn* v. *Saxton,* 68 Cal. 353 [9 Pac. 420]; *Welch* v. *Sargent,* 127 Cal. 72 [59 Pac. 319].)  (3) Cases involving a peculiar statutory liability and governed by statutory provisions. (*Barrich* v. *Gifford,* 47 Ohio St. 180 [21 Am. St. Rep. 798, 24 N. E. 259]; *Leighton* v. *The Leighton Lea Assn.,* 146 N. Y. App. Div. 255 [130 N. Y. Supp. 935]; *Miller* v. *Lane,* 160 Cal. 90 [116 Pac. 58].)

There are many cases holding that where the subscription is unconditionally payable at specified times the statute runs from those times.  (See cases cited in note 61 of 6 Fletcher's Cyclopedia Corporations, p. 7139, 14 C. J. 1102, note 84, and 3 Clark & Marshall on Private Corporations, sec. 802.) No case to the contrary has been cited herein, and we have found none to the contrary with the single exception of the case of *Payne* v. *Bullard,* 23 Miss. 88 [55 Am. Dec. 74], decided in 1851.  In that case the court concluded, erroneously as we think, that the "trust fund doctrine" was applicable thereto and operated to prevent the statute from running in favor of stockholders as against corporate creditors. In the absence of circumstances of fraud (actual or constructive) or estoppel there is no real trust relationship between the stockholders of a corporation and its creditors. The trust fund doctrine has been generally rejected in the later decisions.  (2 Pomeroy's Equitable Remedies, 2d ed., sec. 2319, p. 5142; 3 Clark & Marshall on Private Corporations, sec. 768, and cases there cited.)  Whether that doctrine still obtains in this state or not, it is at any rate not now to be regarded as modifying or adding to the established rules of equity jurisprudence for relief upon the ground of fraud. (*Rhode* v. *Dock-Hop Co., supra,* at p. 377.)

It has been suggested that the conclusions here reached do violence to the spirit and purpose of the law and will have the effect of reducing the rights of corporate creditors to little more than a sophistry.  The same suggestion was directed with equal force and with equal validity against the interpretation of section 359 of the Code of Civil Procedure, which resulted in "an anomalous condition of affairs," whereby the statute might run against the stockholders' liability imposed by the constitution itself, even before the creditor's right of action thereon could arise.  (*Hunt* **v.**

*Ward*, 99 Cal. 612, 615 [37 Am. St. Rep. 87, 34 Pac. 335].)
The answer there made was that the situation so complained
of "would be the result of the voluntary act of the creditor
done in the face of the law." The same answer applies
with equal validity to the criticism here made. If a credi-
tor elects to extend long-term credits to a corporation upon
the faith of its unpaid subscriptions, knowing them to be
unpaid, and neglects to ascertain the terms of the subscrip-
tion contracts, the result which follows may be justly
ascribed to his own act; *a fortiori* in the case where he
extends such credit with actual knowledge of the terms
of subscription. The record discloses herein that the plain-
tiff, who was at all times vice-president and manager of
the corporation, had an intimate personal knowledge of the
contracts here sued upon; that, in fact, he personally partici-
pated in procuring many of them from the defendants.
It is suggested that the stockholders could interpose delays
in the proceedings to obtain a judgment against the corpora-
tion, and by appeals to the supreme court could delay the
entry of final judgment until the statute had run upon their
subscriptions, even against the will of the creditor. But the
taking of an appeal does not stay the execution of a judg-
ment unless a bond is given which is adequate to secure the
judgment creditor.

We conclude that the corporate creditor has four years
after the recovery of judgment against the corporation and
return of execution thereon within which to commence his
action in equity to subject the corporate assets to the pay-
ment of his judgment; but in so doing he can (in the ab-
sence of fraud or estoppel) realize upon only such assets
as would be enforceable at the suit of the corporation itself.

The foregoing conclusions render it unnecessary to give
consideration to the various other contentions submitted by
respondents in support of the validity of the judgment
below.

The judgment is affirmed.

Lawlor, J., Seawell, J., Kerrigan, J., Waste, J., and Wil-
bur, C. J., concurred.