## MICHAELS v. McLAUGHLIN (two cases).

District Court, N. D. California, S. D. July, 1927.

### Nos. 17588, 17589.

1. **Internal revenue ⬤⟼7(7)—Transfer of credit from profit and loss to capital account held equivalent to stock dividend, not taxable as income of stockholders (Income Tax Act 1916).**

Transfer from profit and loss to capital stock account, thereby making capital account equal par value of stock issued, and discharging contingent liability of stockholders to pay difference between par value and amount paid in, *held* equivalent to stock dividend, not taxable as stockholders' income, within Income Tax Act 1916 (39 Stat. 756).

2. **Internal revenue ⬤⟼7(10)—Stockholders' contingent obligation to pay balance of stock's par value is not such "debt" that extinguishment by corporation's transfer of credit to capital account amounts to taxable income (Income Tax Act 1916; Civ. Code Cal. § 334).**

Obligation of stockholders to pay the amount remaining unpaid on par value of stock, since it is contingent until formal call, under Civ. Code Cal. § 334, is not such "debt" to the corporation that extinguishment of contingency by transfer to capital account from profit and loss account would amount to income of stockholders within Income Tax Act 1916 (39 Stat. 756).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

3. **Internal revenue ⬤⟼7(7)—Court will look through form to substance in determining whether corporation's transfer of credit to capital account is equivalent to stock dividend (Income Tax Act 1916).**

In determining whether directors' resolution debiting profit and loss and crediting capital account with equal amount was equivalent to stock dividend, within Income Tax Act 1916 (39 Stat. 756), the court will look through the form of the transaction to its substance.

4. **Internal revenue ⬤⟼7(10)—Corporation's transfer of credit from profit and loss to capital stock account postpones stockholders' realization of profit.**

Credit transferred by corporation from profit and loss to capital account is no longer available for distribution, and thereby postpones the stockholders' realization of profit, instead of presenting a tangible gain, within Income Tax Act.

At Law. Actions by C. F. Michaels, as executor of the last will and testament of Henry Michaels, deceased, and by C. F. Michaels, against John P. McLaughlin. Judgments for plaintiffs.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for plaintiff.

George J. Hatfield, U. S. Atty., and Lucas E. Kilkenny and T. J. Sheridan, Asst. U. S. Attys., all of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. These are two actions against the collector of internal revenue for the recovery of amounts exacted by him as income tax for the year 1917. In case No. 17588 the plaintiff is C. F. Michaels, as executor of the will of the taxpayer, Henry Michaels, and recovery is sought for the sum of $4,952.37, with interest at 7 per cent. from the date of payment, March 7, 1923. In case No. 17589 C. F. Michaels sues individually to recover $2,285.69, with interest at 7 per cent. from the date of payment, August 13, 1923. The facts in the two cases are identical, and the two cases are controlled by a single question of law.

[1] That question is whether or not a resolution of the board of directors of Langley & Michaels Company, a California corporation, in which Henry Michaels and C. F. Michaels were the principal stockholders, which was passed on February 6, 1917, and the resultant corporate action, produced income to the two stockholders, within the meaning of the federal income tax statute of 1916 (39 Stat. 756) and the decisions construing that statute.

Langley & Michaels Company was a California corporation having a capital stock of 15,000 shares, of the par value of $100 each, or an authorized capitalization of $1,500,000. The issued and outstanding capital stock amounted to 9,662 shares, of the par value of $966,200. The corporation was largely a family corporation; 4,037 of the outstanding shares being owned by Henry Michaels, and 3,011 shares being owned by C. F. Michaels. Prior to February 6, 1917, all of the shares of the corporation which were issued were paid up to the extent of $80 a share on the par value of $100, leaving an unpaid balance of $20 per share. Thus upon the books of the corporation there appeared in the capital stock account 80 per cent. of $966,200, or $772,960.

The corporation was engaged in the wholesale drug business in San Francisco, and had been so engaged for the better part of a generation. It had accumulated a large surplus, which was carried in the books of the corporation in what was known as the "profit and loss" account; this profit and loss account amounting on February 6, 1917, to $384,506.51. The capital of the corporation

was invested in the business, and on February 6, 1917, the corporation had on hand only $19,020,196 and on that date it owed to its bank $34,925. It was, however, in a healthy condition, and could have borrowed $200,000 without security.

Under these circumstances the resolution in question was passed on February 6, 1917. It read as follows:

"Director C. O. G. Miller moved the adoption of the following resolution: 'Resolved, that the secretary be authorized to make a journal entry as of December 31, 1916, debiting the profit and loss account with $193,240, and crediting capital account with $193,240, so that the credit to the capital stock account shall equal the par value of 1,662 shares of stock issued."

Thereupon the resolution was carried out by appropriate entries in the journal and ledger of the corporation. The transfer was reflected in the December 31, 1916, statement of assets and liabilities. In other words, $193,240 was taken from the profit and loss account, which had previously stood at $384,506.51, leaving a balance to that account of $191,266.51, and at the same time this same sum of $193,240 was added to the capital stock account, which had previously stood at $772,960, and that account thereupon became $966,200. No other change was made upon the books of the corporation reflecting this transaction. The certificates of stock which the stockholders held on February 6, 1917, were stamped "Capital $1,500,000, 15,000 shares, $100 each, $80 per share paid in." These certificates were not taken up until July 15, 1920, when new certificates were issued, showing the stock to be fully paid up.

The collector of internal revenue found that the transaction had resulted in income to Henry Michaels to the extent of $80,740, and to C. F. Michaels to the extent of $60,220, and taxed them accordingly.

The question to be determined is whether this transaction is essentially the equivalent of the declaration of a stock dividend, not taxable under Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, or whether the corporation paid up debts owing to it by the stockholders, diminishing the assets of the corporation by wiping out the right to demand $20 per share, and increasing the interests of the stockholders by the same amount, making the transaction equivalent to the declaration of a cash dividend, and taxable.

[2] In connection with the contention for the latter view, advanced by the government, the following facts should be noted: This corporation was in a flourishing condition and had accumulated a large surplus. Its right to call for the investment of the $20 per share remaining unpaid on the par value of the stock in the hands of the stockholders was contingent upon a formal call in accordance with the provision of section 334 of the Civil Code of California. Los Angeles Athletic Club v. Spires, 166 Cal. 173, 135 P. 298. No such call was made at the time when the resolution in question here was passed. Until such call was made the obligation did not ripen into a debt to start the running of the statute of limitations. Spencer v. Anderson, 193 Cal. 1, 222 P. 355, 35 A. L. R. 822. At the time when the resolution was passed, therefore, the liability of the stockholders to make further contributions to the capital of the corporation was contingent, and had not been formally fixed by any action of the corporation.

[3] What, then, was the effect of the resolution debiting the profit and loss account with $193,240, and crediting the capital account with the same amount, so that the capital stock account should equal the par value of the stock issued? In determining this question the court will look through the form of the corporate transaction to the substance. Eisner v. Macomber, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. So viewed, the transaction now before me appears to be one which does not give rise to taxable income. It complies with each of the three tests commonly applied by the Supreme Court in dealing with nontaxable stock dividends. Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Billings v. U. S., 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596.

The stockholders have the same value before and after the transfer of the authorized amount from the profit and loss account to the capital stock account. The proportional interest of each stockholder remains the same. If the stockholders had surrendered 20 per cent. of their stock and received a 25 per cent. stock dividend, the transaction would clearly have had this effect, and would have been a stock dividend without question. The situation is in its effect the same, where there was no surrender of old shares, no issue of additional shares. Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254. The fact that the original shares

evidenced the increase in the capital stock account created by the transfer from the surplus accumulated by the corporation is immaterial. The original investment of the stockholder and its accumulations still remain the property of the company and subject to the hazards of the business. He holds the same proportion of that property, but has received nothing for his individual use. The incidental extinction of the contingent and, in view of the existing surplus, remote liability to pay $20 a share in the event of formal call, cannot be regarded as an individual gain subject to tax. Southern Pacific Co. v. Lowe, 247 U. S. 330, 338, 38 S. Ct. 540, 62 L. Ed. 1142.

[4] The stockholder has received no present tangible gain by reason of the increase of the capital stock account, but has in fact suffered a postponement of realization of profit. The portion of the accumulated surplus transferred to the capital stock account is no longer available for distribution to the stockholders. It is retained for corporate purposes. Eisner v. Macomber, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

Finally, the alterations made in the book entries of Langley & Michaels Company are a book adjustment only, which conform to the language describing the transaction held not taxable in Eisner v. Macomber, supra:

"In order to make the adjustment, a charge is made against surplus account with corresponding credit to capital stock account, equal to the proposed 'dividend'; the new stock is issued against this, and the certificates delivered to the existing stockholders in proportion to their previous holdings. This, however, is merely bookkeeping, that does not affect the aggregate assets of the corporation or its outstanding liabilities; it affects only the form, not the essence, of the 'liability' acknowledged by the corporation to its own shareholders, and this through a readjustment of accounts on one side of the balance sheet only, increasing 'capital stock' at the expense of 'surplus'; it does not alter the pre-existing proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before."

The resolution of the Langley & Michaels Company was equivalent to the declaration of a stock dividend, and no taxable income resulted to these plaintiffs.

For the reasons above stated, judgment should be entered in favor of the plaintiffs in the above cases.

So ordered.