[S. F. No. 12448. Department One.—October 3, 1928.]

R. E. CLARK, Respondent, v. W. SYDNEY TOMPKINS et al., Appellants.

Theodore J. Savage for Appellants.

Samuel D. Hamburg for Respondent.

CURTIS, J.—The plaintiff, a judgment creditor of the Elkhorn Oil Company, a corporation, organized, existing, and doing business under the laws of this state, filed this

creditor's action against the defendants as stockholders of said corporation to recover the amount of a judgment rendered against said corporation and in favor of plaintiff's assignor. In the main the facts out of which this controversy arose are not disputed. The corporation became indebted to the Riteway Printing Company for goods sold and delivered to it between June 21, 1921, and October 21, 1921. The Riteway Printing Company assigned its account to D. Phillips, who instituted an action on said account, and in said action recovered a judgment against the Elkhorn Oil Company on the twenty-fifth day of November, 1924, for the sum of $284.64. Thereafter a writ of execution was issued on said judgment directed to the sheriff of the city and county of San Francisco, which was subsequently by said sheriff returned wholly unsatisfied. No part of said judgment has been paid, and prior to the commencement of this action the said Phillips duly assigned to plaintiff the aforesaid judgment, and plaintiff was the owner thereof at the time of the institution of this action.

The par value of the stock of the Elkhorn Oil Company was one dollar per share. The commissioner of corporations of the state of California on December 12, 1922, issued a written permit to said Elkhorn Oil Company to sell a certain amount of its stock at the price of fifty cents per share. The defendant W. Sydney Tompkins on the twenty-sixth day of December, 1923, purchased of said company 11,900 shares of its capital stock at fifty cents per share, and the defendant Norman F. Hall, between the twentieth day of November, 1922, and the second day of October, 1923, purchased of said company 4,000 shares of its capital stock at fifty cents per share. Among other things, said permit as issued by said commissioner contained the following provision: "Prospective subscribers are advised that holders of shares sold at less than par are liable, if said corporation should become insolvent, to the colleection from them of the unpaid residue of the par value of the stock upon a creditor's bill filed for that purpose by the judgment creditors of the corporation." A copy of this permit was printed upon the reverse side of subscription contracts used by the Elkhorn Oil Company in the sale of its stock, and the subscription contract refers to said permit and recites that said subscription contract is "subject to the conditions of the

permit issued by the commissioner of corporations, a copy of which is printed on the reverse side thereof and which I have read.''

There was one question upon which there was a dispute at the time of the trial. The defendants claimed and so set forth in their answer that at the time they purchased the shares of stock in said corporation said stock was worth no more than fifty cents per share and that they bought the said shares in good faith and paid therefor its full market value at the times at which they made their respective purchases. The court, however, found against defendants upon this claim. Upon the facts as found which are substantially those recited above, with the one exception just noted, the court rendered judgment in plaintiff's favor against said defendants. Defendants have appealed.

Appellants first contend that no recovery can be had in a creditor's action against a stockholder of a corporation by a person who was a creditor at the time such stockholder purchased his stock. ▮ In other words, appellants contend that existing creditors of a corporation have no right of action against a stockholder, who purchases stock in such corporation for less than its par value, to recover the difference between the amount he paid for said stock and its par value. This is undoubtedly the general rule and it is stated as follows: ''Existing creditors are not defrauded or injured by an issue of stock as a bonus or on payment of less than its par value in money, or in property, labor, or services, and therefor . . . they cannot complain of such a transaction or compel such stockholders to pay the full par value of such stock so issued to them, contrary to their agreement with the corporation . . . for they could not, by any legal presumption, have trusted the corporation upon the faith of such stock.'' (14 Corpus Juris, p. 1000.)

While the precise point does not appear to have been expressly decided by this court, the following statement taken from a recent decision sets forth in apt language the conditions under which a creditor's action, like the present one, can be maintained in this state: ''The gist of the creditor's action is that he was induced to extend credit to the corporation by the false representations of the corporation respecting the amount paid in by the stockholder to the

corporate capital, and the measure of his recovery is the same as in ordinary actions for damages for deceit, namely, the difference between the amount which has actually been paid in by the stockholders to the corporate capital and the amount which would have been paid in had the representations been true. It follows that the creditor cannot recover in this class of cases unless he was actually deceived by the misrepresentations. If he in fact knew that the stock was watered at the time he extended credit to the corporation, he cannot claim to have been misled by the misrepresentations, and therefore cannot recover." (*Spencer* v. *Anderson*, 193 Cal. 1, 6 [35 A. L. R. 822, 222 Pac. 355, 357].) If, as stated in the foregoing decision, the gist of a creditor's action, such as the present one, is that the creditor "was induced to extend credit to the corporation by the false representations of the corporation respecting the amount paid in by the stockholder to the corporate capital," then such an action would be available only to a creditor who had become such after a purchase of stock by such stockholder for less than its par. This ruling is in harmony with the decisions of the United States supreme court. "We have no doubt the learned circuit judge held correctly that it was only subsequent creditors who were entitled to enforce their claims against these stockholders, since it is only they who could, by any legal presumption, have trusted the company upon the faith of the increased stock. (*First National Bank of Deadwood* v. *Gustin Minerva Consolidated Mining Co.*, 42 Minn. 327 [18 Am. St. Rep. 510, 6 L. R. A. 676, 44 N. W. 198]; 2 Morawetz on Corporations, secs. 832, 833; *Coit* v. *North Carolina Gold Amalgamating Co.*, 14 Fed. 12." (*Handley* v. *Stutz*, 139 U. S. 417, 435 [35 L. Ed. 227, 237, 11 Sup. Ct. Rep. 530, 537, see, also, Rose's U. S. Notes].)

In the present action it appears that the claim upon which the respondent recovered judgment against the Elkhorn Oil Company accrued long prior to the dates on which the appellants herein acquired their stock in said corporation. Either respondent, or one of his predecessors in interest in said claim, was an existing creditor at the time appellants purchased stock in the Elkhorn Oil Company. Respondent stands in no better position than his immediate assignor, or any other prior owner of said claim, in asserting

any right thereunder. Neither respondent, nor any of his predecessors in interest, therefore, extended credit to the corporation upon the faith that appellants had paid full value for their stock. This action, therefore, is not available to respondent under the general rules of law above stated. The fact that the account for goods sold the corporation has been merged into a judgment does not change the rights of the parties, nor give to the holder of said judgment any rights to maintain a creditor's action that were not possessed by the holder of the claim when it consisted of a mere account, even if said judgment had been rendered after the appellants had made their respective purchases of stock. Respondent advances the contention that the judgment is a new debt, and therefore as owner thereof he was not an existing creditor of the corporation at any date prior to the date of the rendition of the judgment. We think this claim is without merit.

Respondent, however, further contends that while the general rule is as above stated, that it has no application to the parties to this action by reason of the fact that the appellants purchased their stock from the Elkhorn Oil Company under a permit which expressly provided that "holders of shares of stock sold at less than par are liable, if said corporation should become insolvent, to the collection from them of the unpaid residue of the par value of the stock upon a creditor's bill filed for that purpose by the judgment creditors of the corporation." This permit was dated December 12, 1922, and it is presumed that it was issued on that date. It was, therefore, in effect at the time the appellant Tompkins purchased all of his shares of stock from the company, and also when the appellant Hall purchased at least a portion of his shares.

The Corporate Securities Act, under which said permit was issued (Stats. 1917, p. 673), provides in section 4 thereof that "the commissioner shall issue to the applicant a permit authorizing it to issue and dispose of securities, as therein provided, in this state, in such amounts and for such considerations, and upon such terms and conditions as the commissioner may in said permit provide." By subdivision 6, section 2 of this act the word "security" includes all shares of stock or other interests or rights into which the capital stock is divided. It is by virtue of section 4 of

the Corporate Securities Act that the commissioner of corporations in this state is empowered to authorize the sale of stock in a corporation for less than its par value. If, therefore, in granting a permit to a corporation to issue and sell its stock for less than its par value, the commissioner shall further provide in such permit, in case of the insolvency of the corporation, that those stockholders who purchase their stock below par thereby assume an obligation to become responsible for the debts of the corporation to the extent of the difference between the par value of the stock purchased and the price which they paid for the same, it would appear that the commissioner acted within the express powers granted him under section 4 of said act. To require the appellants to comply with this works no unjust hardship upon them for the reason that this obligation to protect *pro tanto* the interest of the creditors is one of the conditions of their purchase, and was knowingly and voluntarily assumed by them at the time they made their respective purchases. It is distinctly set forth in the permit under which they purchased their stock and which they are supposed to have read before they made their purchase. If they failed to familiarize themselves with the terms of the permit, then they have no just cause to complain, for it is only by virtue of the permit that the company is authorized to make a sale of its shares of stock. This provision of the permit making stockholders who purchase stock for less than its par value liable to the creditors of an insolvent concern, being legally a part of the permit under which the defendants purchased their stock, the defendants are conclusively presumed to have assented to it and made it a part of their contract of purchase. It is, therefore, a binding obligation upon them.

Appellants devote a considerable part of their argument to the discussion of the question as to whether the appellants are liable where the evidence shows that they paid for the stock its full market value, and that the transaction was free from fraud. We fail to see how this argument can have any weight in this action where the findings of the court upon these issues were against appellants. But even had the findings upon these issues been in their favor, this claim of appellants could not have availed them, as their purchases were governed by the terms of the permit, issued

by the corporation commissioner, which, as we have already seen, cast upon appellants obligations to pay the claims of the corporation's creditors to the extent of that part of the par value of their stock remaining unpaid.

The judgment is affirmed.

Preston, J., and Seawell, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.