[S. F. No. 13465.   In Bank.—September 30, 1931.]

RICHARD F. KAHLE, as Trustee, etc., Respondent, v. GEORGE C. STEPHENS et al., Appellants.

90

■■■■■■■■■■        ■■■■■■

W. F. Williamson, W. R. Wallace, Jr., and Wallace & Vaughan for Appellants.

Gray, Cary, Ames & Driscoll and H. A. Frank for Respondent.

THE COURT.—This is an action by the trustee in bankruptcy of a bankrupt corporation against several defendants, for an accounting, to declare a trust in certain securities, and for other equitable relief. The principal defendant is George C. Stephens, its former president. The trial court rendered judgment in favor of plaintiff for the relief demanded, and defendants brought this appeal, chiefly on the ground that the record does not support the findings and judgment. A study of the record, however, reveals ample evidence in support thereof.

The essential facts are as follows: Prior to 1919, defendant George C. Stephens and R. D. Spicer were the members of Stephens & Company, a partnership dealing in stocks and bonds. They were also the sole stockholders (apart from one other director's qualifying share) of a California corporation of the same name, which dealt in street bonds and property sold for delinquent assessments. In 1919, they commenced a series of transactions which eventually led to this action. The first of these, which may be called the 1919 transaction, was ostensibly designed to increase the capitalization of the corporation so as to expand its business. Appellant's version of this deal, based upon entries in the corporate books, is, in substance, that the capital stock of the corporation was increased, and that Stephens and Spicer purchased 1860 shares of the preferred stock of a par value of $100 per share, for $186,000. What the record actually shows is quite different. The corporation directors adopted a resolution to transfer the assets and liabilities of the corporation to Stephens and Spicer individually, in return for which they were to surrender all of the stock for cancellation. They then organized a corporation called the Public Lien & Realty Company, to which they had these assets transferred. In return for this they received 995 shares of its capital stock, all save

directors' qualifying shares. They surrendered their stock in Stephens & Company for cancellation. The authorized capital stock of Stephens & Company was increased from $100,000 to $1,000,000. Thereupon Stephens and Spicer transferred to Stephens & Company (the corporation) the stock of Public Lien & Realty Company, and the assets and liabilities of the partnership. For this they received 1860 shares of the preferred stock of the corporation.

The permit of the commissioner of corporations authorized sale of the preferred stock for cash at its par value. Obviously the above procedure was not a sale for cash. The consideration was the stock of Public Lien & Realty Company and the assets of the partnership. To give it the appearance of a cash sale, other steps were introduced. When the 995 shares of Public Lien & Realty Company stock were transferred to the corporation, a check for $160,000 was drawn in favor of Stephens and Spicer. This check they indorsed back to the corporation. The other $26,000 (to make the total of $186,000) represents the ostensible net worth of the partnership. However, at the time the check was drawn, there was less than $10,000 in the account, and the delivery and indorsement of it represented no transfer of cash. The net worth of the partnership was likewise imaginary. It was derived from books showing assets of $1,854,111.89, and liabilities of $1,828,111.89. Included in the assets were various items which were subsequently written off the books as losses. The said losses occurred in 1919, the time of the transaction. The value of the Public Lien & Realty Company stock was also inflated. The books showed an item of $40,116.60 for "organization expense", which expense, according to testimony, only amounted to $116.00. The witness Stowell, former secretary of the corporation, testified to the various facts, and his computations showed that the corporation actually received nothing for the stock, but took over liabilities of more than $45,000.

The second transaction took place in 1922. Defendants' version is that Stephens and Spicer, through the agency of Public Lien & Realty Company, sold their 1860 shares of preferred stock to various purchasers, received $186,000, which they permitted to remain on deposit with Stephens & Company (the Corporation) drawing interest at seven per cent. What the court found from sufficient evidence was

that Public Lien & Realty Company had sold to the public more shares of preferred stock than were available, and pending a further increase in capitalization, a. sale of 1860 shares from Stephens & Company to Public Lien & Realty Company was entered in the books of Stephens & Company, and ultimately a credit of $186,000 in favor of Stephens and Spicer appeared on said books. The court found that Public Lien & Realty Company, which had no separate offices, business or cash, acted merely as a dummy, that the purchase by it was a subterfuge designed to cover up the actual transaction, which was a sale by Stephens and Spicer to the corporation of its own stock.

So far it appears that the stock originally issued to them as above described was void because of violation of the terms of the permit (*National Stone etc. Corp.* v. *Voorheis*, 93 Cal. App. 738 [270 Pac. 286]) and for the further reason that it was issued without consideration, in violation of article XII, section 11, of the California Constitution, then in effect. Hence they had actually no stock to sell. But the credit of $93,000 apiece which they received on the books of the corporation was void for the additional reason that the stock was sold to the corporation, and the sale was plainly illegal. (See *Stevens* v. *Boyes Hot Springs Co.,* 113 Cal. App. 479 [298 Pac. 508].)

The third transaction was the liquidation of Stephens' credit in 1924. For it he took certain securities owned by the corporation, the value of which was found by the court to be far in excess of $93,000, being approximately $116,395. During this time the corporation was in financial difficulties. Shortly after he obtained the securities, he transferred them to his wife. In 1926 the corporation went into bankruptcy, showing an excess of about $2,500,000 of liabilities over assets.

The court gave judgment for the return of the securities or their value, and adjudged the transfer to Mrs. Stephens to be without consideration and void. It was also established that Stephens and other members of the executive committee of the corporation had formed a syndicate to purchase stock of Arizona Power Company, which they later resold at an artificially enhanced price to the corporation. Judgment was therefore rendered against Stephens in the additional sum of about $2,060, representing the profit

thus made. That such a secret profit cannot be retained by a corporation director is, of course, well settled. (See *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243].)

It is contended that no injury resulted from the transactions in 1919 because all of the stock was owned by Stephens and Spicer. But the record shows that in October of that year, at the time of the transfer, there were subscribers who had paid for 304 shares and had received interim certificates evidencing their rights in the stock to be issued. Likewise the fact that the directors of the corporation assented to the various illegal transactions does not make them legal, nor is it of any importance in view of the almost complete domination of the corporation by Stephens. The argument that the trustee cannot bring this action on behalf of creditors whose claims were not in existence at the time of the fraud is also without merit. Subsequent creditors are entitled to recover (*Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534 [197 Pac. 799]; *Clark* v. *Tompkins,* 205 Cal. 373 [270 Pac. 946]), and the trustee is a party authorized to sue on their behalf. (*Schroeter* v. *Abbott,* 185 Cal. 146 [196 Pac. 39]; *Dean* v. *Shingle,* 198 Cal. 653 [46 A. L. R. 1156, 246 Pac. 1094].)

It must be remembered that Stephens occupied a fiduciary relationship to the corporation, and was bound to act with the utmost good faith. The evidence shows that he did not, and the trial court in its findings correctly interpreted the complex negotiations. The judgment finds abundant support in the record and the authorities, and we deem it unnecessary to indulge in any lengthy discussion of either.

The judgment is affirmed.