[Civ. No. S. C. 37. Second Appellate District, Division One.—April 19, 1937.]

ANGELUS SECURITIES CORPORATION (a Corporation), Appellant, v. BERTRAND L. BALL et al., Respondents.

John Perry Wood and Stanley Arndt for Appellant.

Loeb, Walker & Loeb, Earl C. Adams, Henry Duque, Dana R. Weller and Herman F. Selvin for Respondents.

WHITE, J., *pro tem.*—This is a suit by plaintiff, a Delaware corporation, authorized to do and doing business solely

in the state of California, against six of its former officers and directors (Harriss, Ball, Cruickshank, Woodward, Crowe and Breslin) and the executrix (Eva Luton) of the estate of a seventh director (Luton), involving certain transactions that took place in 1931. Jean L. Ferguson and Catherine Lyon are also named defendants, they being the mother and daughter, respectively, of director Luton, and are alleged to have received some of the property here involved.

The first cause of action is against all defendants, and in effect alleges that defendants, Ball, Luton, Cruickshank, Harriss, Woodward, Crowe and Breslin, as officers and directors of plaintiff, and in control and domination of its affairs, without right or authority, and illegally, caused and permitted the corporation to diminish and impair its capital assets and to pay out $47,348.17 of its capital assets to directors Luton and Cruickshank and to defendants Ferguson and Lyon, in exchange for 470 shares of the preferred stock and 235 shares of the common stock of plaintiff corporation theretofore owned by Cruickshank, Luton, Ferguson and Lyon; that the facts were concealed from plaintiff, from the other directors, and from the creditors and stockholders; and that when discovery was made, plaintiff repudiated the transaction, served notice of repudiation, tendered back everything plaintiff had received, and demanded restoration of the securities.

The second cause of action is similar to the first, except that it alleges a conspiracy among the defendants (with the exception of Breslin) to accomplish the matters set forth in the first cause of action. A sixth cause of action is similar to the second, except that it sets forth an additional matter of concealment not set forth in the first and second causes of action.

The third cause of action is against directors Ball, Harriss, Woodward and Crowe, and seeks return of certain salaries alleged to have been improperly and fraudulently paid by themselves as officers to themselves as individuals. The fourth and fifth causes of action seek to recover from defendants Ball, Cruickshank, and Luton $2,500 in secret profits alleged to have been received and retained by Ball, with the aid of Cruickshank and Luton, in connection with the exchange of the Luton-Cruickshank-Ferguson-Lyon stock for the alleged assets of the corporation.

Defendant Crowe was not served, and the case was dismissed as to defendant Breslin immediately after the latter had testified at the trial.

At the conclusion of plaintiff's case at the trial, a nonsuit was granted as to all defendants on the first, second, third and sixth causes of action and as to all defendants except Ball on the fourth and fifth causes of action. The trial then proceeded as to defendant Ball on the fourth and fifth causes of action, resulting in a judgment against the latter for $2,500 secret profits, and from which judgment Ball has appealed; but that is the subject of a separate appeal and is not here involved.

Plaintiff corporation prosecutes this appeal from the order granting the motions of defendants Lyon, Ferguson, Cruickshank, Luton, Harriss and Woodward for a nonsuit as to all causes of action, and granting the motion of defendant Ball for a nonsuit as to the first, second, third and sixth causes of action, and also from the judgment in favor of defendants Harriss and Woodward, as well as from the judgment in favor of defendants Luton, Ferguson and Lyon; and from the judgment in favor of defendant Cruickshank; also from that portion of the judgment in favor of defendant Ball on the first, second, third and sixth causes of action; and from that portion of said judgment in which no relief was granted plaintiff against defendant Ball other than judgment in the sum of $2,500, with interest thereon, on the fourth and fifth causes of action.

Epitomizing the material facts disclosed by the record, we find that plaintiff is a Delaware corporation with an authorized capital stock of 10,000 shares of preferred stock of a par value of $100 per share, and 10,000 shares of common stock of no par value. By its charter the corporation was authorized to ''purchase, hold, sell and transfer the shares of its capital stock; *provided it shall not use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of its capital . . .* '' On the date here in question, April 15, 1931, there were actually issued and outstanding 3,500 shares of plaintiff corporation's preferred stock and 4,282 shares of its common stock.

Defendant C. R. Luton, who died prior to the commencement of this action, was a shareholder, president and director

of plaintiff corporation from its inception until April 15, 1931. Defendants Jean L. Ferguson and Catherine Lyon are the daughter and mother, respectively, of the deceased director, Luton. Defendants Cruickshank, Ball, Harriss, Woodward and Crowe were officers and directors of plaintiff corporation.

It appears that early in 1931 dissension had broken out between two groups of plaintiff corporation's directors, Woodward, Crowe, Harriss and Ball constituting one group, with Luton and Cruickshank making up the other. From the evidence it appears that directors Ball, Woodward, Crowe and Harriss were desirous, as Harriss testified, of getting directors Luton and Cruickshank "out of the picture". An approach was made to Luton and Cruickshank by Ball, who offered them some unimproved property for their stock, but the latter refused to make the exchange. About this time directors Ball, Woodward, Crowe and Harriss voted as such directors to terminate the salaries of directors Luton and Cruickshank, in the sum of $500 and $200 per month, respectively, as president and secretary. Directors Luton and Cruickshank voted "no" on this proposal. It appears that plaintiff corporation at about this time was the owner of a lot of trust deeds coming to it as the result of its business activities, which consisted of dealing in the purchase and sale of such instruments. Reference to the record indicates that Ball approached Luton and Cruickshank with a proposition to trade their stock to him in exchange for some trust deeds, and this proposition was accepted by the latter. An agreement had been executed by plaintiff corporation, through defendant Harriss as vice-president, with Ball, under the terms of which it was agreed that in consideration of Ball's purchasing from the corporation certain trust deed notes "more fully set out in our letter to you of April 10th, 1931", for the sum of $47,348.17, the corporation guaranteed to purchase from Ball 470 shares of its preferred stock and 235 shares of its common stock, paying Ball therefor the sum of $47,630.58. On the afternoon of April 15, 1931, Ball obtained the securities from plaintiff corporation, took them to Cruickshank's office and turned over to the latter and defendant Luton the securities, receiving in return from them 1235 shares of the common and 470 shares of the preferred stock of plaintiff corporation. Ball then turned over to plaintiff corporation the 470 shares of preferred and 235 shares of

common stock, keeping for himself 1,000 shares, for which, as far as the record discloses, he personally paid nothing, having received the same in return for the securities of the corporation. The 1,000 shares he later sold to defendant Harriss for $2,500. In connection with this transaction between plaintiff corporation and director Ball, two checks passed. Defendant Harriss, as vice-president of the plaintiff corporation, gave Ball its check for $47,630.58, and received his check for $47,348.17. These checks were drawn on the same branch of the California Bank. Neither Ball nor plaintiff corporation had sufficient money in the bank to meet these checks, and arrangements were made with the bank whereby in due course the checks cleared against each other.

Thus we see that the corporation divested itself of the trust deed securities and in addition thereto issued its check to Ball and Ball issued his check to the corporation. From this we find the corporation dispossessing itself of its securities and receiving nothing in return. That same afternoon the resignations of Luton and Cruickshank as officers and directors of plaintiff corporation were accepted. Defendant Ball was thereupon elected president in the place of Luton, and Crowe secretary-treasurer in the place of Cruickshank. It appears that the common stock, without nominal or par value, possessed the exclusive voting power, and the preferred stock was not entitled to vote upon the election of directors or upon any questions affecting the management of the affairs of the corporation; provided, however, that whenever the corporation failed for a period of eighteen months to pay seven per cent dividends upon the preferred stock, then the holders of the preferred stock would be entitled to the exclusive voting rights. This right of the preferred stockholders, however, did not accrue until May, 1933, at which time it was exercised. It further appears that after obtaining the Luton and Cruickshank stock, as aforesaid, the board of directors voted ten-year contracts each to directors Ball and Crowe, the former as general manager for ten years at a salary of $500 per month, and the latter as financial adviser for ten years at $500 per month; while Harriss was made manager of the sales department for ten years at $675 per month; and Woodward was named manager of the mortgage loan department at a monthly salary of $500. These same last-named directors, it will be remembered, voted on March 16, 1931, to reduce overhead expenses by taking Luton and Cruickshank off the payroll of

the corporation, effective April 1st. When the preferred stockholders came into control by reason of the failure of the corporation to pay them 7 per cent dividends on such preferred stock, this action was commenced.

■ Appellant's first contention is that the securities here in question belonging to the corporation could only be delivered to Ball or Luton and Cruickshank upon authorization of the board of directors, and that there is in the record no evidence of such authorization. The Delaware General Corporation Law (sec. 9, chap. 15, Rev. Code, 1915, as amended), in so far as here applicable, provides: "The business of every corporation organized under the provisions of this chapter shall be managed by a board of directors . . . " The corporation, therefore, could act only through the medium of the board of directors, as prescribed by the statutory mandate. The evidence fails to disclose that any express authority was ever given to Harriss to enter into the transaction that resulted in paying out the corporation's cash and securities. ■ Also, the by-laws of the corporation gave to the president general and active management of the corporation, and to the treasurer the custody of the corporate securities in question. Luton and Cruickshank, who received the securities in question, occupied respectively these offices. These two officers, knowing that the securities in question had belonged to the corporation, seeing the endorsement of Harriss on the securities transferring them to Ball, must have known or should have known, by reason of their official positions with the corporation, that Harriss had no authority from the governing body, the board of directors, to divest the corporation of these securities. Simply because it is within the power of a corporation to purchase its own stock, it does not follow by any means that an executive officer of such corporation may, by virtue of his office, exercise that power. It would seem that a discussion of the subject presented and citation of authorities is unnecessary to show that, in the absence of statutory or charter authority, a vice-president of a corporate organization does not, by virtue of his office, ordinarily possess any such extraordinary authority as that of transferring the corporation's securities in a transaction that had for its objective the buying in of the corporation's own capital stock. The position, as officers and directors of the corporation, occupied by Luton and Cruick-

shank put them without the pale of innocent and *bona fide* holders of such securities in due course. The record also indicates that on April 15, 1931, when this transaction was had, the corporation owed to its creditors $733,801.23, practically twice the entire capital of the corporation. Also, at that time the corporation was under the obligation of paying off its indebtedness to the California Bank, amounting to approximately $438,704.83, and of which debt the bank desired liquidation, but had agreed to a loan of $160,000, provided the balance of the indebtedness was retired.

Defendants Lyon and Ferguson are charged with the knowledge of their agent, Luton. In the exercise of ordinary care and diligence, Luton should have communicated the facts within his knowledge to his principals, Lyon and Ferguson, and failing in this, the principals are deemed to have such knowledge as was possessed by their agent, Luton. To hold otherwise would be to cause great inconvenience, and knowledge could be avoided in practically every case by employing agents. The rights of numerous stockholders were also involved here, as well as creditors' rights. Stockholders who invested their money in good faith had a right to rely on the reciprocal good faith of the directors and officers. Directors of a corporation are frequently spoken of as trustees. Their acts are scanned in the light of those principles which define the relationship existing between trustee and *cestui que trust.* Tested by these familiar principles, the directors involved had no right to take from the corporation securities with which to purchase stock that would set some of them in undisputed control of the corporation. (*Bowen* v. *Imperial Theatres,* 13 Del. Ch. 120 [115 Atl. 918, 922].)

Respondents' claim of ratification is answered by the statement that ratification can never be made upon the part of the corporation by the same persons who wrongfully assumed the power to make the contract. In other words, one who makes an unauthorized contract has no more right to ratify it than he had to make it. In the instant case the board of directors, approving an unauthorized act, cannot later ratify the same.

The purchase by the corporation of the stock here in question, in view of the financial condition of the corporation, was certainly not made out of surplus or surplus profits, but on the contrary, the purchase in question impaired and reduced

the actual corporate assets below its capital stock and debts, because the assets of the corporation at the time of the stock purchase were less than the capital stock and debts; and the stock purchase in question was manifestly prejudicial to the rights of the creditors and other stockholders. The nonsuit as to the first cause of action should not have been granted.

■ As to the second cause of action, wherein a conspiracy is charged among the defendants, we are of the opinion that the nonsuit should not have been granted as to the defendants Ball, Woodward and Harriss, but that the court was correct in granting a nonsuit as to defendants Luton, Ferguson and Lyon, because there is no substantial evidence in the record to make the latter named defendants joint actors in the former's alleged illegal scheme. It was the first-named group alone that was concerned in the actual purchase by the corporation of its own shares and who expected to profit thereby. There is no evidence showing any concert of action between the two groups to accomplish the purposes of the alleged conspiracy, i. e., to place the first-named group in control of the corporation. That this was the purpose of the alleged conspiracy, or that if the purchase of the Luton-Cruickshank stock was made, such objective would have been accomplished, was never brought home to Luton, Lyon or Ferguson. Before the last-named defendants can be held under a conspiracy allegation, the evidence must disclose not only that their actions in selling their stock and receiving corporate securities in exchange therefor was illegal, but that the conduct of Luton, Lyon, Ferguson and Cruickshank was in furtherance of a common agreement or understanding to achieve the unlawful purpose of the directors who negotiated the stock purchase. In this respect the evidence is wholly unsatisfactory.

■ The third cause of action is directed only against defendants Ball, Harriss, Woodward and Crowe, and seeks the return of certain salaries alleged to have been improperly and fraudulently paid by themselves as officers to themselves as individuals. (Crowe was not served.) The law seems well settled that a director or officer of a corporation is not entitled to a salary *per se,* and that he cannot receive a salary unless properly voted by the board of directors at a meeting at which there is a quorum present without counting his vote, and at which a majority, not counting the director affected, voted for the salary. (*Bassett* v. *Fairchild,* 132 Cal. 637 [64

Pac. 1082, 52 L. R. A. 611]; *Wickersham* v. *Crittenden,* 93
Cal. 17, 32 [28 Pac. 788]; Id., 106 Cal. 327, 328 [39 Pac. 602];
*Graves* v. *Mono Lake H. Min. Co.,* 81 Cal. 303, 320 [22 Pac.
665]; *Lofland* v. *Cahall,* 13 Del. Ch. 384 [118 Atl. 1, 3, 4, 5];
*Cahall* v. *Burbage,* 14 Del. Ch. 55 [121 Atl. 646].) In the
instant case, Woodward, Harriss, Ball and Crowe did not
vote for their own salary, but separate resolutions were
introduced authorizing the salary, and while not voting for
the resolution authorizing his own salary, each of the last-
named directors voted for the resolutions authorizing a salary
for the others. Six directors were necessary to constitute
a quorum, and unless, for instance, Crowe, Harriss and Wood-
ward were qualified to vote for Ball's salary, there was not
a proper vote for that salary. Where, as in the instant case,
the evidence shows that directors Ball, Crowe, Harriss and
Woodward were interested in the common object of procur-
ing a salary for each of them, the situation is not saved by pass-
ing several separate resolutions by a majority not interested in
the particular resolution adopted. (*Wonderful Group Min.
Co.* v. *Rand,* 111 Wash. 557 [191 Pac. 631, 633]; 14A Cor.
Jur. 143, 144, sec. 1908.) The weight of authority seems to
be that courts will not separate a resolution into parts and
hold it valid on the ground that each part was carried by a
majority of the votes of the other directors not interested in
that particular portion, and this applies with equal force
where several resolutions are introduced upon the same theory.
The fact that a resolution increasing salaries is voted on in
parts, so that no director votes on the proposition to increase
his own salary, does not justify the passage of the salary
resolution, because the effect is merely to give a semblance
of legality to a wrongful act. (*Davids* v. *Davids,* 135 App.
Div. 206 [120 N. Y. Supp. 350].) As to the third cause of
action the nonsuit should have been denied.

█ The fourth and fifth causes of action seek to recover
from Ball, Cruickshank and Luton the alleged $2,500 secret
profit hereinbefore referred to, and which is alleged to have
been received and retained by Ball with the aid of Cruick-
shank and Luton in connection with the exchange of the
Luton-Cruickshank-Ferguson-Lyon stock for the securities of
the corporation. In this connection, the record indicates that
Ball, after he had acquired an aggregate of 1235 shares of the
common stock from Luton and Cruickshank, for which he
paid nothing, some months later sold 1,000 shares to Harriss

for $2,500. In our opinion, the court below was correct in denying a nonsuit as to Ball, but granting the same as to Luton and. Cruickshank. Appellant cites several cases in which a director was held liable although he received none of the secret profit. However, in all of these cases it is to be noted that the director thus charged either participated and aided in, and had knowledge of, the making of the secret profit (*Reid* v. *Robinson,* 64 Cal. App. 46, 57 [220 Pac. 676]), or was a member of a conspiracy in furtherance of which the transaction was made. (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, 45 [97 Pac. 10, 18 L. R. A. (N. S.) 1106].) The record is barren of any evidence showing that either Luton or Cruickshank took any part in this transaction or received any part of the secret profit. Ordinarily, the only grounds upon which directors or other officers can be held liable for the acts of other officers are that (1) they participated therein, or (2) were negligent in supervising the corporate business, or (3) were negligent in the appointment of the wrongdoer. It need hardly be said that one cannot be held liable as director for wrongs of other corporate officers or agents after he has ceased to sustain the relation of director to the corporation. (3 Fletcher Cyc. Law of Private Corporations, Perm. Ed., pp. 481, 497, secs. 1069, 1082.) It is not claimed that defendants Luton and Cruickshank ever made any profit out of the sale by Ball of the securities in question to Harriss or shared in any way in the illegal profit alleged to have been made. Assuming that there was fraud in the transaction, if legal wrong to the company was there done, it could only be material here as to the respondents Luton and Cruickshank if they were parties to it. Not having been participants therein, either directly or indirectly, no liability, in our opinion, can be put upon them. The action of the trial court in granting a nonsuit as to respondents Luton and Cruickshank under the fourth and fifth causes of action of the complaint was therefore correct.

The question as to when a nonsuit should be granted has received the attention of the courts of this state in innumerable decisions. In weighing the action of the trial court in granting and denying a nonsuit in the instant case, we have had in mind the rule that a nonsuit should be granted only when, accepting the full force of the evidence adduced, together with every reasonable inference favorable to

the plaintiff which may be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes the plaintiff from recovering a judgment under such circumstances. (*Mastrangelo* v. *West Side Union High School*, 2 Cal. (2d) 540 [42 Pac. (2d) 634].)

For the foregoing reasons, the judgment of the trial court in granting a nonsuit as to the first cause of action is reversed.

As to the second and sixth causes of action, the judgment of the trial court in granting a nonsuit as to respondents Ball, Woodward and Harriss is reversed; and the same is affirmed as to respondents Luton, Ferguson, Lyon and Cruickshank.

As to the third cause of action, the judgment of the trial court in granting a nonsuit is reversed.

As to the fourth and fifth causes of action, the judgment of the trial court granting a nonsuit as to respondents Cruickshank and Luton is affirmed.

With reference to. costs on this appeal, it appears that the same was prosecuted as to all seven respondents on one record, made up of a single reporter's transcript and one opening and closing brief. As against respondents Luton, Cruickshank, Ferguson and Lyon, appellant was not 100% successful, and therefore it is ordered that as to the parties last named each bear his respective costs of appeal.

As to respondents Ball, Woodward and Harriss, appellant was 100% successful on this appeal, whereby, under the provisions of section 1027 of the Code of Civil Procedure, it has an absolute right to recover its costs. (*Estate of Prager*, 167 Cal. 737, 739 [141 Pac. 369].) However, there being seven respondents, and, as heretofore stated, only one transcript and set of briefs as to all, we are of the opinion that while appellant is entitled to its costs against the three respondents as to whom it prevailed, those costs should be, and they are, fixed and apportioned at one-seventh of appellant's costs, respectively, against each of the respondents Ball, Woodward and Harriss.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme. Court on June 17, 1937.