[Civ. No. 2789.   Fourth Dist.   Oct. 9, 1941.]

ANGELUS SECURITIES CORPORATION (a Corporation), Respondent, v. EVA M. LUTON, Administratrix, etc., et al., Appellants.

Walker, Adams, Duque & Smith, Earl C. Adams, Henry Duque and Mark E. True for Appellants.

John Perry Wood and Stanley Arndt for Respondent.

MORTON, J., *pro tem.*—This action involves four financial transactions between directors of plaintiff corporation, all alleged to be part of a plan or scheme whereby one group would sell their stock and the other secure control of the company because of dissension between the two factions thereof. The retrial under the first count of the complaint involved defendants Luton, Cruickshank, Ferguson, Lyon and Woodward. Only the portion of the judgment as it affects Eva M. Luton, administratrix of the estate of C. R. Luton, deceased, Jean L. Ferguson and Catherine Lyon, defendants, is before this court for review. An able statement of the complicated facts concerning the purchase by the corporation of the stock of directors Luton and Cruickshank and the transactions relating thereto appears in the opinion of the Second Appellate District Court (20 Cal. App. (2d) 423 [67 Pac. (2d) 152]). That the Luton stock was purchased with assets of the corporation further appears in that opinion, was found by the trial court in this case, and is evident from the record before us. Issues involved in this litigation were also before the Second Appellate District Court in *Angelus Securities Corporation* v. *Ball,* 20 Cal. App. (2d) 436 [67 Pac. (2d) 158]. Hearings in the Supreme Court were denied on each of the aforementioned decisions. Through financial adjustments defendants Ball and Harriss secured covenants not to prosecute this action further as to them unless demanded by their codefendants prior to the retrial. The action was dismissed as to defendant T. P. Breslin prior to the second trial.

It was stipulated by all the parties and such stipulation was accepted by the court, that ''on an appeal from an order granting a nonsuit at a previous trial of this case (20 Cal. App. (2d) 423 [67 Pac. (2d) 152]), the judgment of the trial court in granting a nonsuit as to the first cause of action was reversed; the judgment of the trial court in granting a nonsuit as to Ball, Woodward and Harriss as to the second cause of action was reversed and such judgment affirmed as to Luton, Lyon, Ferguson and Cruickshank; the judgment of the trial court in granting a nonsuit as to Luton and Cruickshank as to the fourth and fifth causes of

action was affirmed; that Luton, Lyon, Ferguson and Cruickshank were and are not [sic] defendants with respect to the third cause of action; and that the trial of this case would be with respect only to the matters contained in said first cause of action."

After the second trial defendant Cruickshank returned to plaintiff everything he had obtained in the transaction, received back what he had given up in the transaction and no final judgment was entered against him. At the second trial the evidence of the first trial was read into the evidence and some additional evidence was introduced. As to the issues here, this evidence, some verbal and some written, had to do mainly with alleged lack of knowledge on the part of Dr. Luton as to the details of the transactions and his knowledge concerning plaintiff's ownership of the securities received by him for his stock, the financial condition of the plaintiff corporation at the time of the transactions, and defendants' right to a credit by reason of the Ball and Harriss adjustments with plaintiff as to this cause of action and other claims and obligations.

After wending one's way through a maze of high finance and technicalities, the words of Justice Cardozo in *McCandless* v. *Furlaud*, 296 U. S. 140, at 154 [56 Sup. Ct. 41, 44, 80 L. Ed. 121], are apropos, wherein he stated:

"Checks and credits have now been traced through their bewildering entanglements. None the less, when the process of analysis is over, it is legitimate to forget the details, and fix our minds on the results. The situation can be simplified without obscuring its essential features. Indeed, only in that way will the realities of what was done be manifest." (See also *Kahle* v. *Stephens*, 214 Cal. 89 [4 Pac. (2d) 145]; *Mannion* v. *Baldwin*, 217 Cal. 600 [20 Pac. (2d) 678].)

After a careful consideration of all the evidence and the law presented, it appears clear that the following questions have been definitely determined:

(1). " . . . that plaintiff is a Delaware corporation with an authorized capital stock of 10,000 shares of preferred stock of a par value of $100 per share, and 10,000 shares of common stock of no par value. By its charter the corporation was authorized to 'purchase, hold, sell and transfer the shares of its capital stock; provided it shall not use its funds or property for the purchase of its own shares of

capital stock when such use would cause any impairment of its capital. . . . ' On the date here in question, April 15, 1931, there were actually issued and outstanding 3,500 shares of plaintiff corporation's preferred stock and 4,282 shares of its common stock." (*Angelus Securities Corporation* v. *Ball*, 20 Cal. App. (2d) 423, at 427 [67 Pac. (2d) 152].)

(2). "Defendant C. R. Luton, who died prior to the commencement of this action, was a shareholder, president and director of plaintiff corporation from its inception until April 15, 1931. Defendants Jean L. Ferguson and Catherine Lyon are the daughter and mother, respectively, of the deceased director, Luton. Defendants Cruickshank, Ball, Harriss, Woodward and Crowe were officers and directors of plaintiff corporation." (*Angelus Securities Corporation* v. *Ball, supra,* at 427, 428 [67 Pac. (2d) 152].)

(3). That the four transactions involving Luton, Cruickshank and Ball were in fact one complicated financial transaction.

(4). By reason of the absence of statutory and charter authority and action of the board of directors, the defendant Harriss, as vice president, did not have the authority to transfer the corporation's securities in a transaction to buy the corporation's own capital stock.

(5). The position of Dr. Luton, as president and in general and active management of the corporation, and Cruickshank, as the treasurer, the custodian of the securities, placed them without the pale of innocent and *bona fide* holders of such securities in due course.

(6). That the evidence is amply sufficient and clearly shows that the capital of the plaintiff corporation was impaired by reason of the Luton, Cruickshank and Ball transactions herein involved.

(7). That defendants Lyon and Ferguson are charged with knowledge of their agent, Luton.

(8). That there was no valid ratification of the wrongful transactions. "In the instant case the board of directors, approving an unauthorized act, cannot later ratify the same." (*Angelus Securities Corporation* v. *Ball, supra,* at 431 [67 Pac. (2d) 152].)

Here, too, after completion of the second trial, the trial judge resolved all conflicts of the evidence in favor of plain-

tiff and found in accordance with the conclusions reached by the appellate court in 20 Cal. App. (2d) 423. These findings are supported by substantial evidence and are final here.

█ Appellants contend that the identical certificates of stock are not available for plaintiff corporation to return to the defendants. The required number of shares are available. The court in *Atkins* v. *Gamble*, 42 Cal. 86 [10 Am. Rep. 282], at page 101, points out that although certain personal property has individual characteristics which justify the requirement of returning specific property, yet as to certificates of stock states:

"But we think the reason of the rule ceases when applied to stocks. It is impossible that any sane person should have centered his affections upon a particular stock certificate, or that any violence could be done to his feelings by requiring him to accept another certificate of precisely similar character, in lieu of it. His own certificate was only the evidence that he owned an undivided interest in the capital and business of the corporation. Another certificate of the same kind, for the same amount of stock, would entitle him to precisely the same rights as the former certificate. Each would be a precise equivalent of the other, and it is certain he could suffer no pecuniary loss by the transaction. . . . "

█ Regarding the claim filed by plaintiff corporation against the estate of Dr. Luton, it appears that he had disposed of part of the assets to defendants Lyon and Ferguson and to others prior to his death; the remainder, however, came into the hands of his administratrix. Under such circumstances the claim was proper. The complaint alleged the filing of a proper claim. This allegation was not denied. The answer of the administratrix alleged the filing of a claim and the trial court found in accordance with the allegation of the complaint. Under this state of the record defendants on appeal cannot attack the sufficiency of the claim.

█ The circumstances here show no laches. The suspicion of stockholder Hatch was aroused at the annual meeting of February 13, 1933. Investigation gradually brought to light the details of this illegal transaction of April 15, 1931. The notice of rescission was passed by the new board of directors on May 15, 1933, and served on defendants the same day. Suit was filed December 7, 1933. Consequently, neither of the defenses of the statute of limitations (Code Civ. Proc.,

secs. 338, 339) apply here. The action was filed within one year after the discovery of the fraud.

█ Concerning the question of holding in trust the property wrongfully received, the law is clear that where one gains property by violation of a trust or through wrongful act, he becomes an involuntary trustee of the thing gained for the benefit of the person who otherwise would have possessed it. (*Clark* v. *Millsap*, 197 Cal. 765, at 782 [242 Pac. 918]; Civ. Code, sec. 2224.) █ Here, too, for the property disposed of by Dr. Luton belonging to plaintiff corporation, whether to his relatives or others, his estate becomes properly liable.

"In giving relief for a breach of trust, a Court of Equity endeavors, in the first place, as far as possible, to replace the parties in the situation they would have been in if no breach of trust had taken place. And for this purpose, when the trust property has been improperly disposed of, and is capable of being followed in specie, it will compel the trustee, or the party in possession, with notice, to reconvey it. If it cannot be followed, or the person in possession cannot be made liable to the trust, the trustee will be decreed to compensate the *cestui que trust*, by payment of the value of the property so lost." (*Freeman* v. *Cook*, 6 Ire. Eq. 373 [41 N. C. 265].)

This rule is also stated in *Victor Oil Co.* v. *Drum*, 184 Cal. 226 [193 Pac. 243], at 238.

Questions raised as to other findings do not affect the vital issues of this action. Sufficient evidence appears in the record to support the trial court's findings and conclusions, and where there is a conflict of evidence, it is for the trial court to determine.

"The other findings made . . . support the judgment, and the rule is that when there are sufficient findings on issues made in the case to support a judgment it is immaterial that there is no finding, or an erroneous finding, on some other issue which, if made, or differently made, would not compel any different conclusion from that reached by the findings which were actually made." (*Wolfsen* v. *Smyer*, 178 Cal. 775 [175 Pac. 10], at 785.)

The litigation between these parties has involved many issues, and all pertinent evidence and legal technicalities have

been carefully reviewed. It is clear that plaintiff corporation is entitled to the relief granted.

The judgments of the trial court are therefore affirmed.

Marks, Acting P. J., and Griffin, J., concurred.

A petition for a rehearing was denied October 31, 1941, and appellants' petition for a hearing by the Supreme Court was denied December 8, 1941.