[L. A. No. 23978.   In Bank.   May 15, 1956.]

BING CROSBY MINUTE MAID CORPORATION (a Corporation), Plaintiff and Appellant, v. WALLAZZ B. EATON, SR., Defendant and Appellant.

Luce, Forward, Kunzel & Scripps and Edgar A. Luce, Jr., for Plaintiff and Appellant.

Edmund G. Brown, Attorney General, and Ralph W. Scott, Deputy Attorney General, as amici curiae on behalf of Plaintiff and Appellant.

Sloane & Fisher for Defendant and Appellant.

SHENK, J.—The plaintiff appeals from an order granting a new trial after judgment in its favor. The defendant appeals from the judgment.

As a judgment creditor of a corporation the plaintiff brought this action against a shareholder of the corporation to recover the difference between the par value of stock issued to him and the fair value of the consideration he paid for the stock. At the conclusion of the trial, the court, sitting without a jury, made findings of fact and conclusions of law and entered judgment for the plaintiff. In support of his motion for a new trial the defendant assigned certain alleged defects in the findings as errors of law.

The defendant formed a corporation to acquire his going frozen foods business. The Commissioner of Corporations issued a permit authorizing the corporation to sell and issue not more than 4,500 shares of $10 par value stock to the defendant and other named individuals in consideration of the transfer of the business. The permit provided that 1,022 shares be deposited in escrow and not be transferred without the written consent of the commissioner, and that the escrowed shares not be sold or issued until the prospective shareholders named in the permit waived certain rights to dividends and to participation in any distribution of assets.

The defendant transferred his business to the corporation. The corporation placed 1,022 shares in escrow in his name pursuant to the provisions of the permit. The remaining 3,478 shares were issued outright to the defendant and after three years were transferred to the other persons named in the permit. Although the 1,022 shares were listed on the corporate records as held by the defendant (accompanied by the notation ''escrowed''), they were never released from escrow. The corporation had financial difficulties and executed an assignment of its assets for the benefit of creditors to a credit association. The plaintiff recovered a judgment against the corporation for $21,246.42. A writ of execution on the judgment was returned unsatisfied.

The trial court found that the value to the corporation of the consideration from the defendant was $34,780.83; that 4,500 shares of stock having a par value of $10 each were issued to the defendant and he became the owner of those shares; that subsequent to the issue of the shares the corporation purchased merchandise from the plaintiff and has not yet paid for all of it; that some $15,000 of the judgment the

plaintiff recovered from the corporation remains unsatisfied, and that the corporation is insolvent.

The judgment for the plaintiff was for $10,219.17—approximately the par value of the 1,022 shares of stock placed in escrow. The judgment was based on the trial court's conclusion that the defendant was liable for the difference between the par value of the 4,500 shares and the value of the consideration the defendant paid for them.

The plaintiff contends that the trial court's findings of fact were supported by the evidence and required a judgment in its favor, and therefore that it was error to grant a new trial. The defendant contends that the order granting a new trial was proper because (1) the finding that he was the owner of 4,500 shares was unsupported by the evidence, and (2) the trial court failed to make a finding on a material issue raised by his answer.

In this state a shareholder is ordinarily not personally liable for the debts of the corporation; he undertakes only the risk that his shares may become worthless. (See repeal of Cal. Const., art. XII, § 3, at general election, Nov. 4, 1930; repeal of former Civ. Code, § 322, Stats. 1931, ch. 257, p. 444; *Kaysser* v. *McNaughton*, 6 Cal.2d 248, 251-255 [57 P.2d 927].) There are, however, certain exceptions to this rule of limited liability. For example, a subscriber to shares who pays in only part of what he agreed to pay is liable to creditors for the balance. (Corp. Code, §§ 1300, 1306.) Although the trial court in the present case found that the defendant had agreed to pay par value for the 4,500 shares registered in his name, the record on appeal discloses no evidence supporting this finding. Therefore, the defendant's liability cannot be predicated upon the theory that a subscribing shareholder is liable for the full consideration agreed to be paid for the shares.

The plaintiff seeks to base its recovery on the only other exception to the limited liability rule that the record could support, namely, liability for holding watered stock, which is stock issued in return for properties or services worth less than its par value. Accordingly, this case calls for an analysis of the rights of a creditor of an insolvent corporation against a holder of watered stock. Holders of watered stock are generally held liable to the corporation's creditors for the difference between the par value of the stock and the amount paid in.

■ The defendant's first contention is that because of the escrow he never became an owner of the 1,022 shares and that he therefore never acquired such title to the 1,022 shares as would enable a creditor to proceed against him for their par value. Section 25508 of the Corporations Code authorizes the Commissioner of Corporations to require that shares be placed in escrow. This authority has frequently been exercised for the protection of the public. The escrow in the present case permitted the defendant to retain some, but not all, of the incidents of ownership in the 1,022 shares. Although he could not transfer the shares, it appears that despite the escrow he was entitled to count them in determining the extent of his rights to vote and to participate in dividends and asset distributions. The critical feature of the escrow for purposes of the present case is the absence of any restriction on representations that the escrowed shares were outstanding and fully paid. Although the escrow contained provisions designed to protect future stockholders, it afforded no special protection to future creditors of the corporation. Therefore, the escrow did not affect the rights of future creditors and it would appear that despite the escrow the defendant acquired sufficient title to the 1,022 shares to permit the plaintiff to proceed against him for their par value.

The defendant's second contention is that the trial court failed to make a finding on a material issue raised by his answer.

The liability of a holder of watered stock has been based on one of two theories: the misrepresentation theory or the statutory obligation theory. ■ The misrepresentation theory is the one accepted in most jurisdictions. The courts view the issue of watered stock as a misrepresentation of the corporation's capital. Creditors who rely on this misrepresentation are entitled to recover the "water" from the holders of the watered shares. (See cases collected in Ballantine, Corporations (rev. ed. 1946) § 350; Dodd and Baker, Cases and Materials on Corporations (2d ed. 1951) pp. 786-789; 11 Fletcher Cyclopedia of the Law of Private Corporations (rev. and perm. ed. 1932) § 5232, p. 568, n. 64, § 5233, pp. 577-579; Bonbright, *"Shareholders' Defenses Against Liability to Creditors on Watered Stock"* [1925] 25 Columb.L.Rev. 408, 412, 420-421.)

Statutes expressly prohibiting watered stock are commonplace today. (See statutes collected in 11 Fletcher, Cyclopedia of the Law of Private Corporations (rev. and perm.

ed. 1932 § 5209.) In some jurisdictions where they have been enacted, the statutory obligation theory has been applied. (See cases collected in 7 A.L.R. 983-986; Dodd and Baker, Cases and Materials on Corporations (2d ed. 1951) p. 795, n. 7.) Under that theory the holder of watered stock is held responsible to creditors whether or not they have relied on an overvaluation of corporate capital.

■ In his answer the defendant alleged that in extending credit to the corporation the plaintiff did not rely on the par value of the shares issued, but only on independent investigation and reports as to the corporation's current cash position, its physical assets and its business experience. At the trial the plaintiff's district manager admitted that during the period when the plaintiff extended credit to the corporation, (1) the district manager believed that the original capital of the corporation amounted to only $25,000, and (2) the only financial statement of the corporation that the plaintiff ever saw showed a capital stock account of less than $33,000. These admissions would be sufficient to support a finding that the plaintiff did not rely on any misrepresentation arising out of the issuance of watered stock. The court made no finding on the issue of reliance. If the misrepresentation theory prevails in California, that issue was material and the defendant was entitled to a finding thereon. (Code Civ. Proc., § 632; see *Edgar* v. *Hitch, ante,* pp. 309, 312 [294 P.2d 3].) If the statutory obligation theory prevails, the fact that the plaintiff did not rely on any misrepresentation arising out of the issuance of watered stock is irrelevant and accordingly a finding on the issue of reliance would be surplusage.

It is therefore necessary to determine which theory prevails in this state. The plaintiff concedes that before the enactment of section 1110 of the Corporations Code (originally Civ. Code, § 299) in 1931, the misrepresentation theory was the only one available to creditors seeking to recover from holders of watered stock. (See *Clark* v. *Tompkins,* 205 Cal. 373 [270 P. 946]; *Spencer* v. *Anderson,* 193 Cal. 1, 6 [222 P. 355, 35 A.L.R. 822]; *Rhode* v. *Dock-Hop Co.,* 184 Cal. 367 [194 P. 11, 12 A.L.R. 437].) However, he contends that the enactment of that section reflected a legislative intent to impose on the holders of watered stock a statutory obligation to creditors to make good the "water." ■ Section 1110 provides that "The value of the consideration to be received

by a corporation for the issue of shares having par value shall be at least equal to the par value thereof, except that: (a) A corporation may issue par value shares, as fully paid up, at less than par, if the board of directors determines that such shares cannot be sold at par. . . ." The statute does not expressly impose an obligation to creditors. Most jurisdictions having similar statutes have applied the misrepresentation theory obviously on the ground that creditors are sufficiently protected against stock watering schemes under that theory. (See cases collected in Ballantine, Corporations (rev. ed. 1946) § 351, pp. 809-812; Dodd and Baker, Cases and Materials on Corporations (2d ed. 1951) pp. 785-786; 11 Fletcher, Cyclopedia of the Law of Private Corporations (rev. and perm. ed. 1932) § 5209; Bonbright, *"Shareholders' Defenses Against Liability to Creditors on Watered Stock,"* [1925] 25 Columb.L.Rev. 408, 414-416, 422.) In view of the cases in this state prior to 1931 adopting the misrepresentation theory, it is reasonable to assume that the Legislature would have used clear language expressing an intent to broaden the basis of liability of holders of watered stock had it entertained such an intention. In this state the liability of a holder of watered stock may only be based on the misrepresentation theory.

The plaintiff contends that even under the misrepresentation theory a creditor's reliance on the misrepresentation arising out of the issuance of watered stock should be conclusively presumed. This contention is without substantial merit. If it should prevail, the misrepresentation theory and the statutory obligation theory would be essentially identical. This court has held that under the misrepresentation theory a person who extended credit to a corporation (1) before the watered stock was issued (*Clark* v. *Tompkins, supra,* 205 Cal. 373), or (2) with full knowledge that watered stock was outstanding (*Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534 [197 P. 799]; *Sherman* v. *Harley,* 178 Cal. 584 [174 P. 901, 7 A.L.R. 950]. See also *Spencer* v. *Anderson, supra,* 193 Cal. 1, 6; *Rhode* v. *Dock-Hop Co., supra,* 184 Cal. 367, 378; *R. H. Herron Co.* v. *Shaw,* 165 Cal. 668, 671-672 [133 P. 488, Ann.Cas. 1915A 1265]), cannot recover from the holders of the watered stock. These decisions indicate that under the misrepresentation theory reliance by the creditor is a prerequisite to the liability of a holder of watered stock.

The trial court was therefore justified in ordering a new trial because of the absence of a finding on that issue.

It is unnecessary to further consider the defendant's appeal from the judgment.

The order granting the new trial is affirmed. The appeal from the judgment is dismissed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.